## George R. Nicholson v. Frank H. Dyer.

*Replevin—Plaintiff's title—Credibility of witness.*

Execution was levied on an express package of money sent by the judgment debtor to an agent of his firm to repay advances made by the agent in the interest of his principals. The agent brought replevin against the sheriff. *Held* (1) that as between these parties the question of defendant's right to seize money in the hands of the express company was immaterial; (2) that if the money was mutually meant as payment, plaintiff could recover, but if it was meant to be used by the agent in the principal's business, he could not; (3) that defendant was not concluded by the concurrent testimony of the consignor and the consignee that it was a payment, but was at liberty to show the contrary if he could. Nor was the jury bound by the plaintiff's version.

It is the jury's duty to judge of the credibility of witnesses as well as to form their beliefs from the facts and circumstances shown.

In replevin it is competent to disprove plaintiff's title to the goods, and one way to do this is to show that some one else owns them.

A plaintiff in replevin cannot be allowed to prevail upon a ground which he has virtually repudiated by resorting to that form of action, as by relying on his right as consignee.

The wisdom of a verdict is not for the appellate court to consider.

Error to Alpena.    Submitted Jan. 27.    Decided April 13.

REPLEVIN.    Plaintiff brings error.    Affirmed.

*Turnbull & McDonald* for plaintiff in error.

*Kelley & Clayberg* for defendant in error.    Title to property sued for in replevin is a question for the jury : *Merch. Nat. Bank v. Bangs* 102 Mass. 291 ; *McKay v. Ross* 40 Mich. 548 ; where a transfer of title is in dispute the intention of both parties to it must have concurred to pass title : 2 Greenl. Ev. § 525 ; *Pratt v. Parkman* 24 Pick. 45 ; *Wakefield v. Lithgow* 3 Mass. 249 ; *Gurney v. Howe* 9 Gray 404 : *Crane v. Pratt* 12 Gray 348 : Benj. Sales § 710.

GRAVES, J.    March 15, 1879, Charles E. Mason sent by the American Express Company from Detroit a package of $800 consigned to the plaintiff at Alpena.    The defendant was then sheriff of Alpena county and held for collection an execution from the circuit court of that county in favor of Bradford & Cady and against said Mason and one Luce for $632.82, and as the wagon of the express messenger was in front of the postoffice in Alpena on its way to the express office the defendant discovered the package lying on the seat by the driver and immediately seized it on the execution. This was in the afternoon of the 19th of March.    He opened the package the next morning and applied so much as necessary of the contents to satisfy the execution, and offered the remainder to the plaintiff who refused to accept less than the whole amount and immediately brought replevin.

No seizure was effected on the writ of replevin, and under the rulings of the circuit judge the plaintiff failed to recover. He complains that errors were committed to his prejudice. The objections stated are very numerous but many of them are irrelevant, and most of the others are so plainly without merit that they are not pressed.

It is expedient to bear in mind the relations of the parties and the character of the action. It is not between the consignor and consignee nor between either of them and the carrier. Neither is it founded on the contract for carriage. But it is a case of replevin where the consignee has brought suit as owner for the possession against a stranger who has dispossessed the carrier. The action is avowedly based on the right of property and possession.

Mason & Luce carried on business at Alpena, and the plaintiff, as he testified, did "pretty much all of the office business and a great deal of outside business." He was their agent. There was evidence tending to show that he had advanced from time to time for the concern during the preceding winter something more than $800, and that it was arranged between him and Mason that the latter should send him the money by express to repay such advances, and that the package in question was forwarded pursuant to that arrangement. There was also evidence tending to show that the money was forwarded to be received by the plaintiff as the agent of Mason & Luce, and not as his money, and other evidence tending to negative his ownership.

From what has been said it is quite apparent that the question made prominent in the plaintiff's brief relative to the defendant's right to seize money on execution when in the charge of an express company and in the course of being carried from the consignor to the consignee is in no manner involved and is altogether immaterial. The controversy is not between the execution debtor, or one in his shoes, and the officer. The position taken and maintained by the plaintiff is that on the consignment and dispatch of the money it became his property and was at his risk. He insists that it belonged to him exclusively at the time the defendant made

the seizure, and the establishment of this proposition he makes essential to his recovery.

Now if he did not own it, the question of its liability to execution is unimportant. His want of interest is fatal on his own theory. On the other hand if he did own it, the question is equally uncalled for. Because the only execution connected with the transaction was not against him nor leviable on his property. Therefore the point concerning the legal practicability of taking money on execution whilst in such custody is to be laid out of the case. The event of the action could in no manner be influenced by it. As already observed the vital question which the jury had to settle was whether, at the time the defendant seized it, the money did or did not belong to the plaintiff. But in order to reach a conclusion on that inquiry it was necessary they should consider not only the evidence by the plaintiff that he was the owner, and the evidence of others of his admissions that he was not; but also the circumstantial grounds of inference that the package was dispatched as the money of Mason, and in order that it should be received by the plaintiff and disbursed in his character of agent in the affairs of Mason & Luce.

If the latter explanation was found to be the true one the necessary consequence was that it indirectly but conclusively negatived the plaintiff's ownership and right of action. It was no less the duty of the jury to judge for themselves in regard to the credit of witnesses than it was to look into their own minds for the state of belief which was generated by the facts and circumstances. There was nothing to which the law had assigned a fixed evidentiary effect, and which was consequently removed out of the sphere of moral reasoning. Without withholding from the jury anything pertinent, the judge explained the claims made on each side, and submitted the case on the only issues which were involved in it.

The main part of the charge was as follows:

" The defendant's theory of this case is that on account of the relations which existed between Mason, Luce & Co. at the time of making this affidavit in replevin, and for sometime previous to that time, that this money was not sent at

that time for the purpose of paying Nicholson, but was sent for the purpose of being used in the business of the firm, in paying off the men; and they offer in evidence the admissions and declarations of Nicholson, as bearing on the probabilities of the case as to whether Nicholson was really the owner of that money at the time when he brought this action of replevin, or whether it belonged to Mason, Luce & Co.

"The whole testimony in the case goes to you together, gentlemen. You will consider it all for what you deem it to be worth, and after having fully considered the evidence in all its bearings in the case, you will then ascertain what impression this testimony, taken as a whole, has made on your minds. If the impression made on your minds by the testimony in this case, taken as a whole, is that Mr. Nicholson, at the time he swore out this affidavit in replevin, was the owner of the money, that it was really sent to him by Mason for the purpose of paying the debt which Mason, Luce & Co. owed him, then he will recover in this action, in the manner in which I will hereafter state. If, however, you think the probabilities are the other way, then he will not recover anything in this action. For the purpose of informing you further in regard to the law of this case, as I understand it, I will give you some of the requests to charge.

"But before giving you the requests I will give you the law upon one of the points in the case.

"If the jury find that Mason was owing plaintiff and it was understood between them that Mason should express or send this money to him for the purpose of paying the debt which was then owing by Mason, Luce & Co. to Nicholson, and that Nicholson so understood it and assented to it being sent by express in the manner in which it was sent for the purpose of paying the Nicholson debt, and the jury find that it was thus sent, the jury will find for the plaintiff."

It seems to be claimed that as there was evidence for the plaintiff, and Mason & Luce were owing the plaintiff an amount equal to or exceeding the money sent, and that it was agreed between Mason and the plaintiff that it should be sent by express, and that the package in question was dispatched to the plaintiff's address accordingly, it was conclusive on the defendant that the money belonged to the plaintiff.

Here, as elsewhere in the case, the issue made by the plaintiff is to be kept in mind. As before stated he rests his right to recover on the ground of ownership. And on this issue

it was certainly competent to disprove his title, and as one mode of doing so it was competent to show that the money was owned by Mason or by Mason & Luce. If by either it was not the plaintiff's money and his action of replevin for it was not maintainable on his own theory. This seems not to be questioned, but the point relates to the proper mode of proving their ownership and to what is claimed to be the exclusive nature of certain *indicia* of title. The objection seems to be that the form given to the transaction by Mason and the plaintiff was, as between the plaintiff and defendant, absolutely controlling and decisive that the plaintiff was in fact the owner.

Whatever the effect might have been in a controversy between the plaintiff and Mason, or in one between the carrier and either of them, it is a great mistake to suppose it was necessarily conclusive in this action against Dyer. He was not concluded by the appearance which they had given to the business, but was wholly at liberty to satisfy the jury, if he could, that what was set up as a transfer of Mason's property in the money to the plaintiff was nothing more than a dispatch of the funds by Mason to the plaintiff as his agent, in order that they might be disbursed by the latter in the business and for the use of the principal. There is no question about the rule. 2 Whar. Ev. § 923 and notes.

A further consideration must be noticed. The objection assumes that the version given by Mason and the plaintiff was binding on the jury, and that nothing remained except to infer from it conclusively that the plaintiff owned the money. Of course there is no warrant for any such theory. There was evidence directly opposed to their claim that the package belonged to the plaintiff, and there were surrounding circumstances of an unfavorable tendency which might naturally have influence.

The observations of Mr. Justice Cooley in *Moliter v. Robinson* have a close application. He said: "The jury were under no obligation to believe the plaintiff's statement, and unless it convinced their reason, they were entirely at liberty to reject it altogether. They must take the evidence with

all its surroundings; and often other things which go to characterize a transaction are more convincing than positive evidence of any single witness, especially if an interested witness." 40 Mich. 200. Mr. Mason's connection with the case does not avert the principle.

Several criticisms are urged against the portion of the charge quoted; but they are not approved. They either proceed on misconception or rest on verbal refinements which have no importance. The charge was adapted to the facts, and on the whole was fair and the jury could not have been misled by it.

A suggestion appears in the brief that if the money belonged to Root, as the plaintiff said it did, according to the testimony of one or two witnesses, the action was still maintainable by Nicholson in his character of consignee. It is a sufficient answer that this would be to allow him to take contradictory positions and to prevail finally upon a ground which he has never taken but has virtually repudiated throughout. To repeat what has been noticed more than once already, his case, as maintained by his own oath and that of his chief witness Mr. Mason, is that he sues as exclusive owner of the entire interest. It is needless to say more on this point and there is nothing further that demands discussion.

The exceptions to evidence noticed in the brief have no merit. Whether the jury decided wisely is not a matter of inquiry here. They must have found that the package was not the property of the plaintiff, and that is decisive.

There being no error the judgment should be affirmed with costs.

The other Justices concurred.