## HARPER v. MORSE et al., Appellants.

### Division One, February 27, 1893.

1. **Practice, Appellate**: ESTOPPEL. Parties are generally bound on appeal by the positions taken by them in the trial court.

2. **Adverse Possession.** What the components of adverse possession are is a question of law; their existence is usually one of fact.

3. ———. Several phases of the Missouri law of adverse possession discussed.

4. ———: NOTICE. Title by adverse possession cannot originate between landlords of adjacent tracts of land in possession of the same tenant without notice of the adverse claim brought home to the other proprietor.

114 317
131 606
114 317
137 172
114 317
72a 564
114 317
149 238
77a 381
79a 356
114 317
163 486
114 317
178 1 90
179 1399

5. **Evidence:** RES GESTÆ. Certain declarations by one in possession of real property, concerning the extent and nature of his claim and occupancy, *held*, admissible as *res gestæ.*

*Appeal from Montgomery Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*W. W. Fry* for appellants.

(1.) Plaintiff's first instruction is misleading. Defendant might not have "intended to hold all the land first fenced," yet limitation began as to the land he claimed adversely, that is, up to the surveyed line, before the fence was moved back to it. According to this instruction there could be no adverse holding without a fence, while in fact "a fence is not essential to constitute adverse possession." *Leeper v. Baker*, 68 Mo. 400; *Mississippi Co. v. Vowels*, 101 Mo. 225. (2) Plaintiff's third instruction refers the jury to the pleadings for the issue and is not supported by the evidence. *Skyler v. Bollman*, 82 Mo. 35. Plaintiff's fourth instruction is erroneous. Adverse possession does not rest on the understanding or knowledge of the owner. *Walbrunn v. Ballen*, 68 Mo. 166; *Cole v. Parker*, 70 Mo. 372; *Handlan v. McManus*, 100 Mo. 124. (3) Plaintiff could recover only on his title as it was at the date of the institution of this suit. The court therefore erred in rejecting evidence offered by defendant to the effect that plaintiff owned and claimed only the land within his inclosure, and erred in refusing defendant's two instructions on this point. *Dunlap v. Henry*, 76 Mo. 106; *Ford v. French*, 72 Mo. 250. (4) The evidence of witness Harper as to the declarations of W. H. Morse in regard to the line in section 8 was improperly admitted and defendant's instruction excluding it

should have been given. It was not the declarations of a party to the suit and was in reference to land and a line not in controversy. The evidence of witness Shackelford was hearsay. (5) The court instructed the jury that "they had nothing to do with the questions of improvement." This took from the jury defendants' most effective evidence. The fact that permanent and valuable improvements have been placed on the land in dispute is evidence to be considered as showing an intention to hold adversely to all. *Hamilton v. West*, 63 Mo. 93; *Walbrunn v. Ballen*, 68 Mo. 164; *Cole v. Parker*, 70 Mo. 379; *Handlan v. McManus*, 100 Mo. 124; Tyler on Adverse Possession, sec. 906.

*Barker & Shackelford* for respondent.

(1) The defendants' first contention is not tenable; the instruction complained of is proper, in light of the facts in the case at bar; it being a case of disputed line between adjoining proprietors, the instruction number 1 is in conformity to decisions of this court on that question. *Fannin v. Kellogg*, 49 Mo. 118; *University v. McCune*, 38 Mo. 485; *Thomas v. Bibb*, 45 Mo. 384; Washburn on Real Property, p. 500; *Huckshorn v. Hartwig*, 81 Mo. 648; *Wilkerson v. Thompson*, 82 Mo. 328; *Cole v. Parker*, 70 Mo. 372; *Skinker v. Haagsma*, 99 Mo. 208. (2) Plaintiff's third and fourth instructions were proper; the latter is a counterpart of plaintiff's first instruction and was rightly given. (3) There was no evidence that defendants intended to claim or did claim beyond their true line; the possession of co-terminous proprietors under a mistake or ignorance of the true line and without intending to claim beyond the true line will not work a disseizin in favor of either. *Crawford v. Ahrnes*, 103 Mo. 88; *Finch v. Ullman*, 105 Mo. 255.

BARCLAY, J.—This is an action in ejectment, begun August 20, 1888, for a certain tract of land in Montgomery county.

The petition makes the usual allegations of plaintiff's ownership, etc., of a specified quarter section, and then charges that defendant entered upon, and "took possession of the strip of land on the western edge or side of said southwest quarter of said section 5; said strip so taken possession of by said defendants being a strip the entire length of said southwest quarter of said section 5, and of about the average width of two hundred feet, and being a part of said southwest quarter," etc., with the usual formal allegations following.

The defendants are the adverse claimant of the land and his tenant in possession. Their answer is a general denial.

The cause was tried by Judge HUGHES and a jury. The plaintiff exhibited a clear paper title to the strip of land in dispute. The defense was adverse possession for the period of limitation.

The evidence of both parties showed that the land in suit had been within an inclosure (made by defendants) during a much longer period than ten years. The real issue was as to the nature of the claim by defendants to the land so inclosed. They asserted it to be adverse, etc., while plaintiff insisted that it was friendly, and by mistake as to the true line. There was testimony sustaining both contentions. The jury found in favor of the plaintiff and the court rendered judgment accordingly.

Defendants then took this appeal after the usual steps therefor.

Several objections are made to the proceedings on the circuit.

1. Defendants criticise the first instruction given for plaintiff which told the jury, that if they believed from the evidence "that defendant or his landlord first fenced the land, not knowing where the true line was, but only intending to hold to the true line when ascertained, and never intended to hold all of the land first fenced, then, until he removed his fence and put it upon a line he claimed as the true line, the statute of limitation did not begin to run."

No doubt this instruction is faulty as an abstract statement of the law. A fence is not necessary to advertise adverse possession. The latter may stop short of a fence, and yet be maintained in some circumstances as far as it really reaches. But, nevertheless, the instruction was not erroneous as applied to the case in hand, for the facts therein recited after the word "until," presented the only showing made by defendants on that subject, as may be plainly seen from their own instruction number 2, likewise given by the court, viz:

"2. The court instructs the jury that if the defendant had had the line between his land and section 5 surveyed and stones set showing said line, and that defendant inclosed the land in question with a fence, and occupied said land and cultivated it and kept it fenced for ten successive years immediately prior to the institution of this suit; and that defendant surveyed, fenced, occupied and cultivated said land with the intention of claiming title to said land up to the line surveyed and established by W. H. Morse, then the verdict must be for the defendant."

The latter instruction shows the theory of the case which defendants advanced, and plaintiff's instruction cannot be invalidated for conforming thereto.

Generally speaking, parties are bound by the positions they assume upon the trial. The court commits no error in so framing its instructions as to sharply present the points of real controversy, as developed by the course of the proceedings, without indulging in abstractions outside the facts in issue.

2. There is complaint of plaintiff's fifth instruction because it fails to define adverse possession. Its terms are these, viz.:

"5. The court instructs the jury that the verdict must be for the plaintiff unless the jury believe from the evidence in the case that defendant has acquired the title to the strip of land by adverse possession thereof, as explained and defined in other instructions."

It was predicated on an express admission by counsel for defendants at the trial in regard to the location of the true line between the lands of the litigants. It was furthermore accompanied by several instructions touching adverse possession, given for plaintiff, some of which are not criticised, and others of them will be shown further on. Along with them went defendants' instruction number 1 as follows:

"1. The court instructs the jury that if they find from the evidence in the case that the defendant, J. F. Morse, has been in open, adverse and notorious possession of the strip of land in question continuously for ten successive years immediately before the date when this suit was instituted, and claimed title to the same, then the verdict must be for the defendant, even though during that time the record title to said land was in fact in the plaintiff and his grantors."

What are the essential components of adverse possession is a question of law, though the existence thereof is usually a question of fact.

The trial court in its instructions did not depart from that recognized rule. For convenience it referred directly to that issue in the instruction locating the burden of proof, now under review, but the form of that allusion was such as to preclude the idea that the jury were authorized to determine what constituted adverse possession. They were plainly referred to the other instructions which undertook to state the legal principles controlling that subject. There was no fault in this.

3. Defendants next assign error on plaintiff's sixth instruction, viz.:

"6. The court instructs the jury that defendant, and those under whom he claims, has not acquired the title to the land in controversy by adverse possession unless he had held the actual possession thereof for ten years prior to the twentieth day of August, 1888, and during all that period of time he claimed the land as his own, and intended to dispute plaintiff's title thereto, regardless of where the true line, when definitely ascertained, should be."

The objection is that the instruction ignores the rule that adverse possession, to carry title, need not continue during the ten years next before the date when the action is begun.

Undoubtedly the proper sort of adverse possession for the statutory period will transfer title, whether that period runs to the time of action or terminates sooner. But the defendants' instruction number 1, already quoted, contained precisely the same declaration on this point that is now questioned.

Defendants cannot complain of the giving of a rule of law to the adversary which they themselves invoked.

4. Plaintiff's fourth instruction is also attacked as erroneous. Its language is this:

"4. If the jury believe from the evidence in the case that neither plaintiff nor defendant, or those under whom defendant claims, knew the true line between the land owned by them respectively, and defendant, or those under whom he claims, built the fence where it now stands, believing it to be on the true line, and at the time did not intend to claim more land than belonged to him, then his possession of the land in controversy was not at the time adverse to the owner, *and did not afterwards become adverse, unless plaintiff, or those under whom he claimed, learned that defendant, or those under whom he claims, did not have his fence on the true line, and that he claimed as his own the land in suit.*"

The criticism is upon that part of the instruction which we have indicated by italics.

Defendants' evidence disclosed that ten years before this action was commenced the land in controversy, as well as that east and west of it, was in possession of the same person, and so remained until 1880. He occupied the tract west, as agent of the principal defendant, and had a lease to section 5 from its then owner, the plaintiff's predecessor in title. The fence until 1881 remained where originally placed, defendant not then (or since) claiming to own beyond the line to which it was moved back in that year.

From the admitted facts, shown by defendants' own evidence, it is manifest that the occupancy of the disputed strip was originally simply permissive and by consent of the true owner and not adverse to the latter's rights. It could not become adverse between the landlords during the joint occupancy of both tracts by a common tenant or agent in possession, certainly not unless notice of such adverse claim was clearly given to the other landlord. This is all that this instruction signifies as applied to the facts before the

court; and if there was any legal error in it, it was not to the disadvantage of defendants. By this we mean that we do not intend now to decide (for the point is not presented for judgment) whether a title by adverse claim and possession can originate as between two landlords, by reason of acts of a tenant in joint possession of their adjacent property. All that we determine on that subject at this time is, that such title cannot begin [in such circumstances as appear here] unless the claimant thereof at least brings home notice of such a claim to the other landlord. (Compare *Wilkerson v. Thompson*, 82 Mo. (1884) 317.)

Moreover, their offers of proof demonstrate that defendants coincided with the theory, embodied by the learned circuit judge in the instruction under discussion, of the necessity of actual notice of the adverse claim to plaintiff's predecessors in title. They submitted evidence to that point which would have been entirely irrelevant otherwise, and are bound by the position then taken by them.

We are of opinion that the instruction in question was not erroneous, at least as against any complaint by the defendants.

5. Error is next assigned on the admission of evidence, on behalf of plaintiff, of the declarations of a tenant of defendant Morse in possession of the land at the time, before the rise of any dispute, tending to show the extent and nature of his claim and occupancy at the point of present controversy. It is unnecessary to discuss as an original proposition the admissibility of this testimony. It is now well settled in Missouri that such evidence is competent as part of the *res gestæ*.

6. The foregoing observations dispose of all the points presented that appear to call for remark. We

find in the record no material error to the prejudice of the substantial rights of defendants upon the merits.

The judgment is affirmed, with the concurrence of BLACK, C. J., and BRACE, J.  MACFARLANE, J., takes no part, having at one time been of counsel.