R. P. BUCKMAN, Respondent, v. MISSOURI,
   KANSAS & TEXAS RAILWAY COMPANY,
   Appellant.

St. Louis Court of Appeals, February 3, 1903.

1. **Railroad Killing Stock: SUIT: ERRONEOUS ADMISSION OF EVIDENCE: WITHDRAWN BY INSTRUCTION.** The erroneous admission of evidence as to defective fences is harmless where the court subsequently instructed that defects therein would not authorize a verdict for plaintiff, and stated what particular facts must be found to authorize a verdict for him.

2. ———: ———: ———: ———. Civil judgments are not reversed by appellate courts for the admission of incompetent evidence afterwards withdrawn from the consideration of the jury by an instruction.

3. ———: ———: INSTRUCTION, DEFECTIVE, CURED BY OTHER INSTRUCTIONS. Any vagueness in an instruction as to the neglect authorizing a verdict for plaintiff is cured by other instructions stating explicitly the only basis of a verdict for him.

4. ———: ———: ———. Refusal of an instruction covered by one given is not error.

5. ———: ———: ON GOOD COUNT, JUDGMENT FOR PLAINTIFF: OTHERWISE ON BAD COUNT. Where the petition for negligent killing is in three counts, and the plaintiff has a verdict on one of them, and is not entitled to recover on the others, judgment is properly entered for plaintiff on the one count and for defendant on the others.

6. ———: ———: SECTION HAND OF EXPERIENCE: WITNESS: OPINION QUALIFIED TO GIVE. A person who has been a railroad engineer and fireman for seven years, and one who has been a section hand for fourteen years, during which, on numerous occasions, he has observed trains stopped, are sufficiently qualified to testify as to the time required to stop a train running as it was.

7. ———: ———: EMPLOYEE, DISCHARGED: OPINION, COMPETENT TO GIVE, WHEN: That a railroad employee was discharged and could not afterwards get employment with another railroad, unless it was for incompetency, can not be shown to affect his qualifications to testify as an expert in regard to handling a train.

8. ———: ———: WITNESS, TESTIFIED AT FORMER TRIAL: MAY BE IMPEACHED, HOW. A witness can not be required to say whether he can point out any testimony of his on a former

trial as to a certain matter, but, if it is desired to impeach him, he should be asked whether he did or did not testify as to that particular matter.

9. ———: ———: CLEAR TRACK: NEGLIGENCE IN NOT STOP-PING TRAIN: EVIDENCE SUFFICIENT. Evidence in an action for injury to a horse struck by a train *held* sufficient to warrant a finding that the trainmen, after discovering it on the track, might have checked the train, by the use of ordinary care, in time to avoid striking it.

Appeal from Monroe Circuit Court.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*Geo. P. B. Jackson* for appellant.

(1) The court erred in admitting, over defendant's objection, any evidence concerning the condition of the fence and cattle guards. Such evidence did not tend to sustain any issue under the third count of the petition. At any stage of the case that evidence could only have related to the first and second counts, neither of which was properly involved in the last trial. (2) The second one had been dismissed and should have been out of the case altogether, while the first one was really concluded by a verdict for defendant on the first trial. (3) The first and second counts only remained in the case for entry of final judgment on them when the case was finally disposed of. Needles v. Burk, 27 Mo. App. 211-214; s. c., 98 Mo. 476; Boeger v. Langenburg, 97 Mo. 390. (4) The court further erred in refusing the demurrer to plaintiff's evidence. If we concede that plaintiff's only witnesses on the subject were qualified to speak concerning the distance in which a train could be stopped, still there was a failure of proof by plaintiff. According to plaintiff's witnesses the train could not have been stopped in time to avoid injuring the mare. Plaintiff's case depended upon his proving affirmatively that it could have been safely stopped in

time. It was so decided on the former appeal in this case. Buckman v. Railroad, 83 Mo. App. 129. ·

No brief for respondent.

GOODE, J.—The amended petition in this case is in three counts, the purpose of each being to recover damages for the death of a mare killed on the track of the appellant railway company in Monroe county, Missouri.

The case was in this court before and is reported in 83 Mo. App. 129. The original petition, on which the first trial took place, was also in three counts and was like the amended petition, except a trifling difference in the second count. The first count of each prayed for double damages because of the failure of the railroad company to erect and maintain proper fences and cattle guards by reason whereof the mare got on the right of way and was killed; the second count prayed single damages on the same allegations, and the third count charged negligence in handling the train alleged to have struck the animal.

Before the first trial, plaintiff dismissed as to the second count of the original petition and went to trial on the first and third counts with the result that the jury found· a verdict for the railroad company on the first count and for the plaintiff on the third. There was judgment accordingly and the case was appealed to this court, which reversed and remanded it for retrial.

Afterwards the plaintiff filed the amended petition on which the second trial was had and which, as stated, differs in no material respect from the first petition.

During the second trial the circuit court admitted testimony against the objection of the defendant, touching the defective condition of the fences and cattle guard where the animal got on the right of way, the purpose of said testimony being to maintain the case as stated

in the first and second counts of the petition and which
had been disposed of at the first trial in the manner
stated.   Later, the court reconsidered its ruling in re-
gard to that evidence and gave an instruction that a de-
fective condition of the company's fence or cattle guard
would not authorize a verdict for the plaintiff and that
the defendant could not be charged with any negligence
because of the bad condition of either; but the appellant
insists the admission of said testimony was harmful and
entitles it to a new trial.

Civil judgments are not reversed by appellate
courts for the admission of incompetent evidence when
the testimony is afterwards withdrawn from the con-
sideration of the jury by an instruction, except in ex-
treme instances where it is manifest that the prejudicial
effect of the evidence on the jury remained despite its
exclusion and influenced their verdict.   Stavinow v.
Ins. Co., 43 Mo. App. (K. C.) 513; Fowles v. Bebee, 59
Mo. App. (K. C.) 401; Cobb v. Griffith, 87 Mo. 90;
Sidecome v. Railroad, 93 Mo. 400; O'Mellia v. Railroad,
115 Mo. 205; McGinnis v. Railroad, 126 Mo. 404.   In
this case besides withdrawing the irrelevant evidence
(granting for the purpose in hand that it was irrelevant)
from the consideration of the jury, they were pointedly
charged concerning the particular facts they must find
to warrant a verdict for the plaintiff, and there is no
reason to think they ignored those charges and based
their verdict on the excluded facts.

Complaint is made of the first instruction given at
the instance of the plaintiff:

"The court instructs the jury that if they find from
the greater weight of the evidence in the cause that on
the 3d day of February, 1898, the plaintiff's mare was
on defendant's railroad at a point between the first and
third public crossings on said railroad, north of the
town of Clapper, in Monroe county, Missouri, and was
then and there struck by a locomotive engine or cars,

Vol 100 app—3

run and operated by defendant's agents or employees, and thereby killed, and if the jury further find that the striking of said animal by said engine or cars was the direct and proximate result of negligence on the part of defendant's agents or employees, if any, in charge of said engine and cars, in running or operating the same, then the verdict of the jury should be for the plaintiff, and unless the jury so find, their verdict should be for the defendant."

The objection to the above charge is that it authorized the jury to return a verdict for the plaintiff for any negligence they might conjecture the defendant's servants had been guilty of in operating the train which killed the mare; whereas the evidence showed that, if the servants of the company were negligent at all, they were only so in not endeavoring to check the train after detecting the mare on the track.

We think the instruction was a proper one and not too general, for it permitted a recovery only if the mare was struck by the train on account of negligence in operating it; but if open to any criticism on the ground of vagueness, it was cured by instructions given at the instance of the defendant, which told the jury that the only basis of a verdict for the plaintiff was that men operating the train actually discovered the mare on the track and in a place of danger when the train was at such a distance it might have been stopped by the use of the usual appliances at hand for that purpose, with safety to the train and persons on it, in time to avoid striking her, and that after discovering her, such employees failed to make the necessary effort to stop the train. This charge in substance, as embodied in several different instructions, was according to the former opinion in the case, and the jury must have understood the facts they were to find before they could hold the company responsible, if clear language could enlighten them.

Complaint is made of the refusal of an instruction

that whether there was any fence or cattle guard on the railroad company's right of way, or, whether, if there, it was sufficient or defective, was immaterial, as those matters were not to be considered by the jury in arriving at a verdict. That charge was sound, as only the case stated in the third count was to be tried; but it was covered by the aforesaid instruction given at plaintiff's instance that the defendant could not be charged with any negligence by reason of defects in the fence or cattle guard on its right of way nor a verdict given for the plaintiff on account of such defects.

After the verdict was returned the court entered judgment thereon for the plaintiff on the third count of the petition and in favor of the defendant on the first and second counts, which was according to the prayer of the answer and to good practice. Needles v. Burk, 97 Mo. 476; Boerger v. Langenburg, 97 Mo. 390; Edwards v. Railroad Co., 97 Mo. App. (K. C.) 103.

The admission of the testimony of two witnesses offered by the plaintiff as to the time required to stop a train running as the one was that struck the mare, is assigned for error on the ground that said witnesses did not qualify as experts. One of them testified to having been a railroad engineer and fireman for seven years; while the other said he was in the railroad business as a section hand for fourteen years, during which period, on numerous occasions, he had observed freight and passenger trains stopped. We think those witnesses were sufficiently qualified to make their testimony competent. Goins v. Railroad, 47 Mo. App. (K. C.) 173; Turner v. Haar, 114 Mo. 325. One of them was shown to have been discharged by the Burlington company for whom he had worked, and after he was discharged he held no other railroad position. A point is made about the court's refusing to allow him to answer whether he had been able to get railroad employment since his discharge. The witness answered that question by saying he had never tried to get it; and an objection being

made by the plaintiff's attorney, after the answer was given, the court remarked that the testimony was only admissible as tending to prove he was discharged for incompetency. That ruling was correct, for the only purpose of the question, as of all cross-examination, was to test the qualification of the witness as an expert in regard to handling trains. If, however, he was discharged for any other reason than lack of skill, or could not afterwards secure railroad employment for any other reason, the circumstance could have no bearing on the weight of his evidence.

It is also objected that the court refused to permit the plaintiff to answer whether he could point out in the bill of exceptions on which the case was formerly appealed, any testimony given by him at the former trial that he had found a piece of the mare's hoof on the track, he having testified on the second trial that he did find a piece of her hoof on the track. The exact question asked of Buckman was this: "Are you able to point out a place in your testimony about finding a piece of the hoof before?" To this question plaintiff's counsel objected and the court sustained the objection, saying that the witness might be asked whether he did or did not testify as to that particular matter. That ruling was accurate and the court's remark indicated the right way to lay a ground for impeaching the plaintiff. We know of no rule of evidence by which a witness can be called on to say where, in a stenographer's notes taken on a former trial, he finds certain statements then made by him or whether he can find them at all.

Finally, it is insisted there was no evidence tending to show the trainmen might have checked the train by the use of ordinary care in time to avoid striking the mare after discovering her in a dangerous position, and an ingenious argument is gone into by defendant's counsel to establish this contention. After reading all the evidence we think there was much testimony on that

issue for the jury to weigh. Witness McLeod, who almost saw the accident, testified that he himself, the engineer and the horses on the track (for there were two, but only one was hurt) seemed to discover the danger at the same time. He testified further that the moon was shining brightly, and there was testimony that the piece of track along which the train approached the mare was straight and level for a long distance. McLeod knew the engineer saw the horses by hearing the stock alarm sounded and swore the engine was then about seventy yards away; that the train was running at a pretty fair speed and seemed to run faster after the whistle was sounded than before and that there was no effort made to stop or check the train. There was other testimony given on the second trial tending to show the train could have been stopped within the distance it was from the horses after they were detected by the engineer. The testimony of the engineer himself was that he used all means at his command to stop and that in fact the mare was never struck by the engine, but received her injuries by running along the track over the ties. On the other hand there was testimony to show the wounds and bruises on her were of a sort that must have been caused by a collision. Unquestionably all this evidence was for the jury to consider, and as we find the case was properly tried the judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.