(99 N. W. 55.)

---

GEORGE W. FIFER v. WILLIAM J. FIFER.

Opinion filed December 14, 1903.

**On Appeal De Novo Case Heard on Same Theory as Tried Below.**

1. Where an action which is shown by the pleadings to be a combination of an action of forcible entry and detainer and an action in the nature of ejectment to try title has, by plaintiff's consent, been tried and determined by the district court as an action to try title and right of possession, and judgment for possession has been rendered in his favor upon that theory of the action, upon an appeal by defendant and demand for trial de novo in this court, under section 5630, Rev. Codes 1899, the plaintiff will not be heard to assert that

the action is in fact one of forcible entry and detainer, and that the question of title and right of possession cannot be reinvestigated in this court. The parties having submitted the cause to the district court for determination as one involving title, it will be so treated by this court upon appeal.

### Assignment of Land Contract — Equitable Mortgage.

2. Defendant executed and delivered to plaintiff a written assignment of a contract for the purchase of certain land, and the latter entered into possession. One year later the defendant retook possession. In an action for the recovery of possession, in which plaintiff alleges that he is "the owner" of the land, and "entitled to possession thereof," it is *held*, upon an appeal de novo in this court and upon the facts narrated in the opinion, that the assignment to plaintiff was not absolute, but was given for security only.

Appeal from District Court, Ramsey county; *Cowen*, J.

Action by George W. Fifer against William J. Fifer. From a judgment for plaintiff, defendant appeals.

Reversed.

*Townshend & Denoyer,* for appellant.

Title is a legitimate defense in an action of forcible entry and detainer in this state. Murry v. Burris et al., 6 Dak. 170, 42 N. W. 25; section 6677, Rev. Codes 1899, subdiv. 1.

As a general rule the defendant cannot plead title in himself or in third persons to defeat the right to recover on a basis of prior actual possession, *except in a few states where provision is made for transferring the cause to a court competent to try title.* 9 Enc. Pl. & Pr. 64.

This case must be tried and determined by this court upon the same theory pursued below. 2 Cyc., pp. 670 to 692 and cases cited; 21 Enc. Pl. & Prac. pp. 664 to 668; Davis et al. v. Jacoby, 55 N. W. 908; Van v. Rouse, 94 N. Y. 401; James et al. v. Wilson et ux., 8 N. D. 186, 77 N. W. 603; Marshall v. Andrews, 8 N. D. 364, 79 N. W. 851; Conner v. National Bank of Dakota, 64 N. W. 519; Moquist et al. v. Chapel, 64 N. W. 567; Power v. Bowdle, 3 N. D. 107, 54 N. W. 404; Estey v. Birmbaum, 68 N. W. 290; Western Town Lot Co. v. Lane, 62 N. W. 982; Perry v. Beaupre, 50 N. W. 400; Graham v. Selbie, 74 N. W. 439; Noyes v. Brace et al., 70 N. W. 846; Baird v. Woodard, 61 N. W. 612; Aultman, Taylor Co. v. Gunderson, 60 N. W. 859.

*McClory, Barnett & Adamson,* for respondent, and *Guy C. H. Corliss,* of counsel.

The plaintiff's action was begun in justice court under section 6677, Rev. Codes 1899, and certified to the district court by such justice. Defendant by answer interposed a purely equitable defense, and upon the trial thereof objection was made by plaintiff to all evidence of the defendant in support of such defense.

The defense interposed by the appellant is not available in an action of forcible entry and detainer. Chicago, M. & St. P. Ry. Co. v. Nield, 92 N. W. 1069, 9 Enc. Pl. & Pr. 66 ; Torrey v. Burke, 76 N. W. 302 ; Ill. Cen. Ry. Co. v. Baltimore, etc., 23 Ill. Ap. 531 ; St. Louis, etc. v. Wiggins Ferry Co., 102 Ill. 514 ; Brown v. Haseltine, 70 N. W. 648.

Neither counterclaim nor set-off can be pleaded to an action of forcible entry and detainer. Abrams v. Watson, 59 Ala. 524 ; Kelly v. Teague, 63 Cal. 68 ; Warburton v. Doble, 38 Cal. 619 ; Folsom v. Clark, 72 Me. 44 ; Haynes v. Union Invest. Co., 35 Neb. 766, 53 N. W. 979.

In forcible entry and detainer, plaintiff, having proven possession, should be entitled to restitution though the fee simple title and present right of possession are shown to be in the defendant. McCauley v. Weller, 12 Cal. 500 ; Romero v. Gonzales, 3 N. Mex. 5 ; Iron Mountain & Helena R. R. Co. v. Johnson, 119 U. S. 608, 30 L. Ed. 504 ; Vidger v. Nolin, 10 N. D. 353, 87 N. W. 593 ; 13 Am. & Eng. Enc. of Law, 756 ; Giddings et al. v. Land & Water Co., 23 Pac. 196.

Defendant must restore the possession unlawfully taken, and then, in a proper action in equity, he may redeem from the alleged mortgage created by an assignment of his contract and have such assignment set aside for fraud, if he can substantiate such a claim. Dysart et al. v. Erslow, 54 Pac. 550 ; Gates v. Winslow, 1 Wis. 650.

It is well settled that in an action of forcible entry and detainer title is not involved and evidence thereof is inadmissible. Lehnan v. Dickson, 148 U. S. 71, 13 Sup. Ct. Rep. 481 ; Cunningham v. Green, 3 Atl. 127 ; Conroy v. Duane, 45 Cal. 154 ; Larkin v. Avery, 23 Conn. 311 ; Stephens v. McCloy, 36 Iowa 659 ; Gage v. Sanborn, 106 Mich. 269, 64 N. W. 32 ; Brown v. Feagins, 37 Neb. 256, 55 N. W. 1048 ; McDonald v. Stiles, 54 Pac. 487.

Evidence shows that plaintiff's possession was actual, within the scope of the forcible entry and detainer statute entitling a party having actual possession to recover the same when taken from him by stealth. Hammond et al. v. Doty, 56 N. E. 371; Wilson v. Shackelford, 41 Cal. 630; Leroux v. Murdock et al., 51 Cal. 541; Huftalin v. Misner, 70 Ill. 205; Lewis v. Yoakum, 32 S. W. 237; Seals v. Williams et al., 31 So. 707; Giddings et al. v. Land & Water Co. et al., 23 Pac. 196; DeGraw v. Prior, 53 Mo. 313; Johnson v. Huffman, 53 Mo. 504; Powell v. Davis, 54 Mo. 315, 13 Am. & Eng. Enc. of Law, 746.

YOUNG, C. J. The parties to this action are brothers. The action affects the right of possession and title of 320 acres of land situated in Ramsey county. The defendant purchased the land on the 24th day of June, 1899, from one Lemuel Berry, upon contract, and entered into possession thereunder, and continued in such possession until the spring of 1901, when plaintiff went into possession. On June 6, 1901, the defendant executed an assignment of his contract to the plaintiff. On the 24th day of February, 1902, thereafter, the defendant, claiming that the assignment to plaintiff was for security only, and that it was no longer in force, returned into possession; whereupon plaintiff instituted this action. The case was tried to the court without a jury. The findings of the trial court were in all respects favorable to the plaintiff, and judgment was entered in his favor, awarding to him the possession of the premises. The defendant appeals from the judgment, and demands a trial *de novo* of the entire case, under section 5630, Rev. Codes 1899.

It is urged in this court by counsel for defendant, as it was in the trial court, that the assignment of the contract to the plaintiff was merely for the purpose of security and in trust, and, further, that the assignment was procured by plaintiff through fraud, and should therefore be canceled. Counsel for plaintiff, on the other hand, contend that the assignment was absolute. They also strenuously contend that this action is one in forcible entry and detainer, and as such involves only the question of possession, and that the judgment of the district court must be affirmed by this court without reinvestigating the question of title and right of possession. It is urged that the inquiry in a forcible entry and detainer action is confined to the actual peaceable possession of the plaintiff and the

unlawful or forcible ouster or detention by the defendant, the object of the law being to prevent the disturbance of the public peace by the forcible assertion of private rights, and that questions of title or right of possession cannot arise; that a forcible entry upon the actual peaceable possession of the plaintiff being proved, he is entitled to restitution, even though the present right of possession be in fact in the defendant. That this is a correct statement of the issues properly arising in a forcible entry and detainer action as that action generally exists is, without doubt, true. In this respect it differs from the action of ejectment. The distinction beween an action of ejectment and one of forcible entry and detainer is well stated in Sedgwick & Wait on Trial of Title to Land, section 94, as follows: "The title or right of possession is always involved in the trial of an action of ejectment. The party who seeks to change the possession by ejectment must first establish a legal title to it, but the remedy for the forcible or unlawful entry is designed to protect the actual possession, whether rightful or wrongful, against unlawful invasion, and to afford summary redress and restitution. The forcible entry, even of the owner himself, and still more the entry of another person, whether forcible or not, is unlawful. The title cannot be drawn in question in forcible entry proceedings, which are frequently conducted in tribunals having no jurisdiction to determine titles to real property. In the one case the question of the unlawful invasion of an actual possession only is involved; in the other the absolute right of possession is to be tried and determined."

It is contended, on the other hand, by counsel for the appellant, that under our forcible entry and detainer statute, which, in its phraseology, is different from any with which we are familiar, title may be placed in issue and litigated. Section 6677, Rev. Codes 1899, which is a part of the Justices' Code, provides that: "This action is maintainable, (1) when a party has by force, intimidation, fraud or stealth entered upon the prior, actual possession of real property of another and detains the same." The Iowa forcible entry and detainer statute, from which that portion of our statute, just quoted, was taken, authorizes the remedy when the entry is upon "the prior, actual possession of another in real property;" that is, when the entry is upon another's possession, regardless of the ownership. Our statute makes the remedy available when the entry is "upon the prior, actual possession of real property of an-

other." The difference in the phraseology of the two statutes constrained the territorial Supreme Court in Murry v. Burris, 6 Dak. 170, 42 N. W. 25, to hold that the action could not be sustained against one who enters upon the possession of his own real property, and that it is always permissible for the owner to show that the property upon which he entered was his own for the purpose of defeating the action, and that to this extent, under our statutory action of forcible entry and detainer, title may be litigated. Justice Tripp, speaking for the court in that case, said: "The material change, as will be observed, consists in placing the words 'of another' after the words 'real property' in our statute, instead of after the words 'actual possession,' as in the Iowa statute, whereby the meaning of the sentence is made to be (if the pronoun 'another' is made to qualify as its antecedent the noun immediately preceding, according to the usual rules of construction) that this action is maintainable where a party has entered by force, etc., upon the prior actual possession of another's real property, while the meaning of the Iowa statute must be construed to be that the proceeding is maintainable where a party by force, etc., has entered upon another's prior actual possession; and if this change was intentional, as it will be presumed to have been, and the word 'another' is made to qualify its preceding noun as antecedent, then the difference in the two statutes is radical in this respect, that, while the Iowa statute applies to all real property, and makes the party who enters by force, etc., upon his own as well as upon the real property of another held adversely, guilty of this offense, our statute makes the party guilty only who enters by force, etc., upon the real property of another; and while it would be no defense in Iowa to allege and prove that the defendant was the owner of the premises alleged to have been unlawfully entered, it would be a perfect defense under our statute, which confines the remedy to lands of another so entered upon."

The conclusion which we have reached as to the issues involved in the action before us renders it unnecessary and improper to discuss and determine whether the effect of our forcible entry and detainer statute is to modify the otherwise unanimous rule in forcible entry and detainer actions, and to permit a defendant to inject the question of title. The pleadings and proceedings had in the lower court show that the action is one to try title. The complaint alleges that the plaintiff is "the owner of" the land, and "entitled to the

possession" thereof, and that he was, at the times named in the complaint, in the peaceable and absolute possession thereof; that on or about the 24th day of February, 1902, the defendant, with force and arms, and by fraud and stealth, and in the nighttime, wrongfully and unlawfully entered upon and took possession of the premises, and has since unlawfully withheld the same; and demands judgment for the immediate possession thereof. The defendant, in his answer, denies generally the allegations of the complaint, and alleges that one Lemuel Berry was formerly the owner in fee of the land in question; that he entered into a contract in writing with the defendant, whereby he agreed, upon the performance of certain conditions, to convey the same to the defendant; that on the 6th day of June, 1901, the defendant assigned the contract to the plaintiff; that said assignment was wholly without consideration, and, further, that while it was absolute on its face, in truth and in fact said assignment was made by the defendant and accepted by the plaintiff in trust for this defendant, and not otherwise; that by the terms of said trust plaintiff agreed to farm said land and use the proceeds thereof in paying certain indebtedness owed by the defendant; that plaintiff has wholly failed to discharge the duties of his trust, and, on the contrary, has converted all the proceeds of the farm to his own use. Defendant further alleges that the plaintiff has no right, title or interest in the premises, or right of possession thereto; that defendant is now, and at all times mentioned in the complaint has been, the owner and entitled to the possession thereof, subject to his contract with said Lemuel Berry; and prays that "the plaintiff take nothing by this action, and that defendant have his costs and disbursements." The findings of fact and judgment recite that this is "an action concerning the title to real property." The case is brought here for a review in its entirety upon all of the issues litigated in the trial court—a court of general jurisdiction. Whether the action was commenced in justice court and certified to the district court, or brought to the district court by appeal, or whether it was instituted originally in the district court, we are not advised. The abstract, upon which our decision must be based, is silent upon this point. However that may be, it is clear that the action as it was tried in the district court was an action to try title. The plaintiff based his demand for possession upon an allegation of ownership and right of possession. It is true the complaint contains allegations which are proper in a forcible entry and detainer action,

but it also alleges that the plaintiff is the owner and entitled to possession. These allegations are no part of a complaint in the action of forcible entry and detainer proper, and their presence in the complaint can only be reconciled upon the theory that the plaintiff desired to try his title and right of possession. Upon these allegations the defendant tendered issue by a denial of plaintiff's title and right of possession, and in addition alleged that his assignment of the contract to plaintiff was merely in trust. It is thus seen that the plaintiff himself, in his pleadings, tendered the issue of title and right of possession. But, even if this were not so, it was competent for the parties to waive their right to have the action proceed as a forcible entry and detainer action proper, and to convert it into an action in the nature of ejectment to try title; and that they did so try it does not admit of doubt. The plaintiff not only alleged that he was the owner of the property, but the first evidence offered by him upon the trial was the Berry contract and the defendant's assignment to him, neither of which had any relevancy whatever upon the issues in a forcible entry and detainer action proper, where the question is, upon plaintiff's theory, merely one of plaintiff's peaceable possession and his ouster by the defendant. These documents could have been offered under no other theory than that title was involved. The evidence relating to plaintiff's peaceable possession and the defendant's entry occupies an insignificant portion of the record. Practically all of the testimony introduced by the plaintiff as well as the defendant relates to the question of title. Nowhere in the record is there a single objection that that question was not in issue, or that it could not properly be litigated in the action. It was in fact litigated and determined, and the judgment from which this appeal is taken would estop the defendant from asserting his equitable rights in another action. The trial court found that the assignment to plaintiff was made "for a good and valuable consideration," and both the findings of fact and the judgment recite that the action was one "concerning title." The point which plaintiff now makes is made for the first time in this court. It was not presented to the trial court in any manner whatever. His attitude in the trial court was that the title was in issue. He procured a determination favorable to himself upon that issue. It is too late, therefore, at this time, to urge that his action was in fact a forcible entry and detainer action, and that title and right of possession could not properly be litigated therein. It is

elementary that litigants cannot try their actions upon one theory in the district court and upon a different theory in this court. Marshall v. Andrews & Gage, 8 N. D. 364, 79 N. W. 851; James v. Willson, 8 N. D. 186, 77 N. W. 603; Broughel v. Telephone Co., 72 Conn. 617, 45 Atl. 435, 49 L. R. A. 404; Peteler Ry. M. Co. v. Adamant Co., 60 Minn. 127, 61 N. W. 1024; Nicholson v. Dyer, 45 Mich. 610, 8 N. W. 515; Harper v. Morse, 114 Mo. 317, 21 S. W. 517; Graves v. Barrett, 126 N. C. 267, 35 S. E. 539. See also, 2 Cyc. pp. 670 to 692, and cases cited. Also, 21 Enc. Pl. & Pr. pp. 664 to 668, and cases cited. The case must therefore be treated in this court as it was treated by the parties themselves in the trial court—as an action in the nature of ejectment to try title.

Our conclusions upon the merits differ from those of the trial court. We are convinced, after a careful consideration of the testimony, that the assignment of the Berry contract to plaintiff, and upon which he bases his right of possession and claim of title, was not·absolute, but was given for security only. This conclusion rests upon facts and circumstances which are not in dispute, and upon documentary evidence. The facts are substantially these: On January 30, 1901, the defendant, while laboring under mental depression, caused by repeated disagreements with his wife, left his home and family in Ramsey county, and went to Oregon, without informing either his wife or any one else of his destination. His property at that time consisted of a government homestead, upon which he had not made final proof, the value of which is not disclosed by the record; his equity in the land in controversy, probably of the value of $1,500, and personal property consisting of ten horses, farm machinery and grain, all of the probable value of $1,500. He was indebted about $900. Four hundred and eighty dollars of this sum was due to one J. H. Smith, of Crary, and was secured by a chattel mortgage upon his stock and machinery and upon the crops to be grown upon the land involved in this action. The plaintiff was guarantor of a part of the Smith indebtedness. The defendant's contract with Berry required him to put in crop each year a specified number of acres, and was forfeitable for a failure to comply therewith. The defendant first disclosed his whereabouts in March, 1901, when he wrote to the plaintiff, asking him to tell Smith to close the mortgage on his stock and implements, and to sell them at the best advantage and apply the money on his notes, and that anything lacking he would pay as soon as able. Some time

later the plaintiff wrote to defendant, offering to "straighten up" his debts if he would give him an assignment of the land contract. Neither of these letters are in evidence. Under date of May 6, 1901, the defendant acknowledged the receipt of plaintiff's letter containing the offer to straighten up his debts, in which he says: "George, you don't know how it relieves me to have all my business straightened up out there. I have studied about nothing but the children and my business since I have been here. Have the papers fixed up right and send them to me and I will sign them." The plaintiff had Smith prepare an assignment of the Berry contract, and also a bill of sale of defendant's personal property, and the same were sent to the defendant for execution. The letter accompanying them appears to have been lost. The assignment and bill of sale were signed by the defendant upon their receipt, but were not immediately returned. On the contrary, and before sending them, he wrote to the plaintiff for further information in regard to his business affairs. The plaintiff did not answer this letter. Defendant then wrote to Smith, and finally to his wife, requesting detailed information in regard to what had been done since he left. Smith, who during this entire transaction acted as plaintiff's agent, under date of June 15, 1901, and at plaintiff's request, wrote to the defendant, giving him, in part at least, the information requested. This letter is in part as follows: "He [George] asked me what was best. * * * Your wife also came down to see me and get advice what to do. There was one of four things to do; either let George take the matter up and go on with it; or, for me to do it; or, your wife to do so; or, close up the whole matter and let the land go. I had a mortgage on the stuff and half the crops; could have foreclosed the mortgage, put in the crop and took half of it. This I would not do, for it is too much trouble and expense. Your wife could hardly do it, for she would have to have a lot of help, which no person would care to give, as they would lose in case of a failure of crop. It seemed too bad to let the land go, as it was worth more than there was against it. So I advised George and your wife to have George go on with the farm, which he has done. * * * George has sold one of the driving colts * * * for one hundred dollars, which is endorsed on your note, and will sell those that are not wanted on the farm the first chance he gets, at least I advised him to do so. A bill of sale or a foreclosure of my mortgage will be necessary some time in order to make title

to the implements and stock. Really, George or myself have no right to sell unless he gets a bill of sale or I foreclose. I don't want to foreclose and think a bill of sale to George will be the best; but do just as you like. * * *" The plaintiff's family "think he should be looking after his own business and not others quite as much as he is. * * * George has been your brother, your friend and the means of your getting here, and should receive some recognition in connection with this deal between you and him. * * *" Under the same date as the Smith letter, to wit, June 15, 1901, the defendant's wife also wrote him in part as follows: "I am running the place the same as if it was yourself, except that George is holding the stock and implements and standing good for your debts and farming the place. He has lived to the contract to the letter and will continue to do so. He has done seeding, or about it, and is breaking on the place now. Smith is working to our interest and we hope to pay your debts this fall as we have fine prospects for crop. George has sold John for one hundred dollars and broke Madge and Fan to buggy, and is asking two hundred fifty for them. Smith thought best to dispose of stock privately and let everything stand as you had left it, so in case of trouble everything would be all right. George has been good to us, and brings everything I ask for. * * * George has farmed that place the same as you would have done. * * * Now, I tell you again, I am trying to fill that contract. * * *" Upon receipt of the Smith letter, and on June 23, 1901, the defendant forwarded the bill of sale and assignment which he had theretofore executed. There is a dispute as to whether he had received his wife's letter at that time. That is not important, however. The Smith letter in itself sufficiently characterizes the transaction as one for security, and not a sale, and the letter from defendant's wife corroborates this view in every respect. On July 9, 1901, which was about two weeks after the assignment had been sent to Smith, the plaintiff wrote to the defendant as follows: "Now Juett, I did not ask for them papers to beat you out of them. I thought if you was going to let it go I would like to have it. When I get it paid for I will try and help you out any time you need it. * * * Will try and answer any questions you ask." About this time the defendant became suspicious of the plaintiff's intention, and anxious because of the position in which he had placed himself. Under date of August 4, 1901, he wrote to the plaintiff in

part as follows: "I am going to make an appeal, not for sympathy or for finance, but right and justice to my children. * * * I have nothing; others have my earnings. * * * My appeal to you is this: Can you and will you take the Berry place, and run it just as if it were yours; take two-thirds for your trouble and expense; take the other third, make the payments on the land, keep the taxes paid, and the remainder of what is left pay Mr. Smith on my notes? And any of my stock or implements that you can dispose of at anything like a reasonable figure, do so, and pay the same to Smith. If you cannot sell them, keep them and work them for their feed. The colts, pasture them and hay them when they need it, and I will pay you for it, and any time I have any money I will send it to Smith. * * * If you and Smith are willing to all of this, send me a different bill of sale for me to sign, because you cannot touch one thing that is not mentioned in the bill of sale. * * * You are to keep the land contract and bill of sale until I return, and then you are to turn the same over to me. * * * When you send the papers for me to sign, send the bill of sale also, so I can sign them both at once, for it is a long and rough ride to get to a notary public. * * * Now George, if you are not willing to do this that I have asked of you, get me a receipt from Smith clear of all accounts, notes, mortgages, etc.; the same from Giles & Miller and Wright & Stevens and send them to me." The plaintiff did not answer this letter, but had Smith do so. Under date of August 10, 1901, Smith wrote as follows: "George gave me a postal outline of the contents of your letter to him, and I will reply, as I promised him to do. * * * As to bill of sale for stock, etc., everything not covered by it is held by my chattel mortgage, so that it is all right. * * * It seems to me that the contract for the Berry land is best just as it stands. George is your friend, and not your only friend either. He has helped you before and I believe will help you again when the time comes. * * *" The plaintiff did not return a receipt for the defendant's indebtedness, or any portion of it. Neither has he returned, or offered to return, to the defendant, those portions of the personal property which he took possession of, and which were not included in the bill of sale, but still retains the same. On or about the 1st day of January, 1902, the defendant returned to Ramsey county, and became reconciled to his wife. He called on Smith for assistance in procuring a settlement with his brother, and also

informed his brother that he was going to live with his family, and that he desired to make a settlement with him, and offered to reimburse him for all his expenditures and pay him $300 in addition. This offer, which was made before the defendant re-entered into possession of the premises, was rejected by the plaintiff.

Upon the facts thus partially narrated, the conclusion that the assignment was given and received as security ·does not admit of doubt. Before the bill of sale and assignment were executed, the plaintiff had taken possession of all of defendant's chattel property, and had entered into possession of the land, and had almost completed seeding; all through an arrangement made with Smith ·and assented to by defendant's wife, which arrangement concededly was made for the purpose of paying defendant's debts and saving the land. The language of the correspondence preceding and attending the giving of the bill of sale and assignment is not the language of a bargain and sale. The only conclusion which can be drawn from the circumstances themselves is that the defendant intended by the bill of sale and assignment to protect his brother as to liabilities already existing and such further liabilities as he would incur in conducting defendant's farming operations for him. The amount of defendant's equity in this land and the chattels included in the bill of sale was at least of the value of $2,000. Although he was temporarily estranged from his wife, he was devoted to his children. It is not conceivable that he intended to sell all he had in the world to his brother for $2,000 less than it was worth, or that he intended to bestow that sum upon him as a gift. But the intent with which these instruments were given and received is not left to conjecture, or to the uncertainty of oral testimony. The Smith letter, which induced the defendant to forward the instruments, stated clearly the relation which existed between these parties when the instruments were exchanged, and the intention with which they were given: "I advised George and your wife to have George go on with the farm, which he has done. George has sold one of the driving colts * * * for one hundred dollars, which is endorsed on your notes, and will sell those that are not wanted on the farm the first chance he gets, at least I advised him to do so." The letter of defendant's wife, written on the same date, is to the same effect: "George is holding the stock and implements and standing good for your debts, and farming the place. He has lived to the contract to the let-

ter and will continue to do so. * * * Smith is working to our interests and we hope to pay your debts this fall as we have fine prospects for crop." Smith also, in his letter, explained that the purpose of the bill of sale was to enable them to dispose of such personal property as could be spared at private sale, to apply upon the defendant's debts; and that the object of the assignment of the land contract was to protect the plaintiff in the labor already expended upon the farm, and in such further expenditures as he would make in looking after the defendant's business. The language of the correspondence above quoted cannot be construed to refer to an absolute sale. So, too, the same may be said of their subsequent correspondence, when the defendant, in August, appealed to his brother for the protection of a definite agreement as to the future operation of the farm. He was not told by the plaintiff that he had bought the farm and was satisfied with his bargain. On the contrary, Smith, answering for him, said: "As to the bill of sale for stock, etc., everything not covered by it is held by my chattel mortgage, so it is all right. * * * It seems to me that the contract for the Berry land is best just as it stands. George is your friend and not your only friend either. He has helped you before and I believe will help you again when the time comes." It is charitable to assume that when the plaintiff took charge of all of defendant's chattels, and later, when, under authority from Smith and defendant's wife, he took possession of the land and put in the crop, and, still later, when he requested the bill of sale and the assignment, his purpose was in truth to act a brother's part in conducting his brother's business, and that these instruments were obtained only for the purpose of protecting him in such liabilities as he had already incurred or would incur in the future. It may be that Smith spoke truly when, on the 23d day of June, 1901, he wrote to the defendant, "He is your brother and your friend." The change in plaintiff's attitude in this transaction is sufficiently explained. When the defendant returned, the land had risen at least $1,000 in value. The plaintiff had marketed a crop of flax, which returned a gross sum of over $5,000. He had in his possession a bill of sale of the defendant's chattels and an assignment of the Berry contract, both of which were absolute upon their face. The original value of defendant's interest therein was at least $3,000. Plaintiff paid nothing for either the land or the chattels, and the only obligation which he pretends to have as-

sumed was to "straighten up" defendant's debts, which did not exceed $900. He made no express promise, either orally or in writing, to reassign the contract, or to restore the personal property under any condition. From the fact that he made no such express promise he assumes that both the bill of sale and the assignment must stand as an absolute sale. In this he is mistaken. It has always been the rule in courts of equity that transactions are to be judged by what they actually are, and not by what they may seem to be. A promise to restore would aid in characterizing the transaction; but where the transaction is one for security in fact a promise is not essential. A court of equity will look to the substance of every transaction, and, when convinced that a transfer of an interest in property was made only for security, it will consider it as such, and determine the rights and obligations of the parties on the basis of that relation. This equitable rule is embodied in the statutory law of this state. Section 4701, Rev. Codes 1899, in part provides: "Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act is to be deemed a mortgage.' * * *" When the defendant returned to the possession of the land in February, 1902, the obligation secured by the assignment had been fully discharged, and the assignment was no longer operative as security. The record does not disclose the exact sums realized by plaintiff from the sale of the defendant's chattels. The plaintiff himself testified, however, that the crop of 1901 was sold for more than $5,000. This sum was greatly in excess of all obligations secured by the assignment. Upon this state of facts the assignment furnishes no ground whatever for the plaintiff's present claim of the right of possession and title to the land in controversy. Defendant, in the prayer in his answer, does not ask for either an accounting, a cancellation of the assignment, a reassignment of the same, or for any equitable relief, but merely that "the plaintiff take nothing," etc. The matter of an accounting must therefore be left for determination in an independent action.

The district court is directed to vacate its judgment, and enter judgment dismissing the action. Appellant will recover his costs and disbursements in both courts. All concur.

## ON REHEARING.

PER CURIAM.  The plaintiff urges in his petition for rehearing that the statement in the foregoing opinion that there are no existing obligations secured by the assignment of the land contract is a finding upon a question not in issue or litigated by either party in the trial court, and that the question of an accounting between these parties should not be prejudged in any respect, but left open for future determination in a proper action.  We have concluded, after a re-examination of the record, that this criticism is just. The plaintiff has based his claim of ownership of the land and the right of possession thereof solely upon the ground that the assignment of the land contract was absolute, and at no stage of the proceedings has he asserted a right of possession, either as trustee or as mortgagee.  It follows, from our conclusion that the assignment was in fact for security, that this action  must  fail.  The direction that the action should be dismissed was proper, but the dismissal should have been ordered without prejudice to the future determination in another action of any rights which the plaintiff may have as trustee or mortgagee, and a full accounting.

As thus modified, the original opinion will be adhered to, and the petition for rehearing denied.  All concur.