ANDREW BROUGHEL, JR., ADMINISTRATOR, vs. THE SOUTH-
ERN NEW ENGLAND TELEPHONE COMPANY.

First Judicial District, Hartford, January Term, 1900. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Section 1008 of the General Statutes provides that all actions for injury
    to the person, whether the same do or do not instantaneously or
    otherwise result in death, shall survive to the executor or adminis-
    trator; and section 1009 prescribes that in actions for injuries re-
    sulting in death from negligence the executor or administrator may
    recover just damages not exceeding $5,000. *Held* that a defendant
    who had negligently killed another could not escape liability for
    substantial damages merely because the death .was practically sim-
    ultaneous with the negligent act.
Where the errors complained of affect only the *quantum* or amount of
    the damages recoverable, a new trial, if granted, will be confined
    to that question.
Having rendered judgment for the plaintiff for nominal damages only,
    the trial court in its finding attempted to assess the amount of sub-
    stantial damages which the plaintiff should recover in case a differ-
    ent view of the law should be taken by this court upon appeal.
    *Held* that this hypothetical assessment of damages was immaterial
    and of no binding force upon the parties.
Under Public Acts of 1897, Chap. 194, § 16, it is unnecessary to pass
    upon alleged errors raised by the appellee upon a bill of exceptions,
    if a new trial is refused. But if the same questions arise also upon
    the finding, they must necessarily be reviewed in determining the
    validity of the conclusion reached by the trial court upon the facts;
    for, conceding the error urged by the appellant, it may be, never-
    theless, that the judgment rendered was the only one legally possi-
    ble upon the facts disclosed by the record, and therefore that the
    error was harmless.
Conclusions of the trial court as to negligence will not be reviewed un-
    less palpably and manifestly unsupported by the facts found.
The cutting of certain electric light wires led to the crossing of others,
    and this resulted in the death of the plaintiff's intestate. *Held* that
    the conclusion of the trial court, that the cutting of the wires was
    the cause of death, was correct.
The complaint alleged that the defendant "negligently, recklessly, wil-
    fully and wrongfully" did a certain act, and by such "negligent
    and reckless conduct and wilful wrongdoing" caused the death of
    the plaintiff's intestate. *Held* that after a default and hearing in
    damages it was too late for the defendant to avail itself of the claim,

even if well-founded, that the complaint charged a wilful tort while the finding was limited to mere negligence, and that therefore there was a fatal variance.

*Argued January 3d—decided February 13th, 1900.

ACTION to recover damages for negligence resulting in the death of the plaintiff's intestate, brought to the Superior Court in Hartford County and heard in damages to the court, *George W. Wheeler, J.;* facts found and judgment rendered for the plaintiff for nominal damages only, and appeal by him for alleged errors in the rulings of the court. *Judgment set aside and new trial granted as to damages only.*

The complaint, in paragraph 4, alleged that the defendant "negligently, recklessly, wilfully and wrongfully cut wires belonging to the Hartford Electric Light Company, and by so doing caused an electric current to pass through the plaintiff's intestate," Davis, while engaged in the performance of his duty as lineman for said Electric Light Company, "and by this negligent and reckless conduct. and wilful wrongdoing caused the death of the said plaintiff's intestate."

The case was defaulted and heard in damages. Upon this hearing the defendant gave written notice, under the statute and rules of court, that it would deny and, if necessary, offer evidence to disprove paragraph 4 of the complaint, and would offer evidence of contributory negligence.

The parts of the finding material upon this appeal are these: "I find that the defendant did not prove that the death of the plaintiff's intestate was not caused by its negligence, nor did it prove that it was caused through the negligence of the plaintiff's intestate; nor can I find that either of these facts were proved in this case. I find that the plaintiff's intestate died through the negligence of the defendant, to which the plaintiff's intestate did not materially contribute.

"Davis' death was instantaneous with the shock of the electric current, and he suffered no pain or sensation, and never recovered the least consciousness. If, upon the facts, sub-

*Re-argued, as to certain points, March 9th, and original judgment of this court affirmed April 4th, 1900.

stantial damages should be awarded, I find the damage should be assessed at $5,000, which sum I so assess. I rule that nominal damages should be awarded, and assess the same at $100."

The plaintiff claimed that he was entitled to substantial damages. The court overruled this claim and gave judgment for nominal damages only.

The two errors assigned in the reasons of appeal relate to the action of the court in ruling (1) that upon the facts as found, only nominal damages should be awarded; (2) that the plaintiff was not entitled to substantial damages as claimed.

Under Chap. 194, § 16, of the Public Acts of 1897, a bill of exceptions in favor of the defendant was allowed by the trial court, and appears in the printed record. It relates to certain decisions of the trial court against the defendant, upon questions of evidence, and upon certain claims of law made by the defendant during the trial.

*Edward D. Robbins*, for appellant (plaintiff).

*Frank L. Hungerford* and *James T. Moran*, with whom was *John W. Alling*, for the appellee (defendant).

TORRANCE, J. The trial court rendered judgment for the plaintiff for nominal damages only. From that judgment the plaintiff alone appealed. Upon that appeal the only grievance of which he complains is that the court gave him nominal instead of substantial damages. He is satisfied with the finding of facts as made. His only claim is that the trial court misapprehended the law in giving him only nominal damages.

The defendant did not appeal from the judgment, but it filed a bill of exceptions which, as allowed by the court, appears in the record. The questions raised in that bill, however, are not necessarily to be considered in connection with those presented by the appeal. They are to be considered only "in case a new trial is advised." Public Acts of 1897, Chap. 194, § 16.

The questions raised by the appeal will be first considered. The trial court has found that Davis' death was, legally speaking, due solely to the negligence of the defendant. It has also found that his death "was instantaneous with the shock of the electric current" that caused it. The court held that inasmuch as the death was thus instantaneous, the law was so that the plaintiff was entitled to nominal damages only. In so holding we think the court erred.

One person may by a wrongful act cause the death of another person. In such case the death so caused may immediately follow the wrongful act, may be, as we say, instantaneous with it; or it may follow after some interval of time. In either case the wrong-doer has violated the rights of the other person; but in either case, at common law, the death of the injured person practically put an end to the liability of the wrong-doer, *civiliter*, for his act. If the injured person died instantaneously, or died before suit was brought by or for him, the liability of the wrong-doer was at an end. If the injured person survived the act for a time, and brought suit, and pending suit died before trial, the suit abated and the liability of the wrong-doer ended. The liability ended because the right to enforce it ended with the life of the injured person. Such right did not survive in favor of any one. The principles of the common law on this subject are embodied in the maxim, " *actio personalis moritur cum persona.*" Sir Frederick Pollock calls the rule expressed in the maxim a barbarous one, "which has been made at all tolerable for a civilized country only by a series of exceptions." Pol. on Torts, p. 54. This rule prevails in this State to-day, except so far as it has been modified or changed by statute or by judicial decisions. *Mitchell v. Hotchkiss*, 48 Conn. 1.

Another rule, said to be a rule of the common law, was to the effect that "in a civil court, the death of a human being cannot be complained of as an injury"; that is, that no one can maintain an action for damages for the mere loss of the life of another. *Baker* v. *Bolton*, 1 Camp. N. P. 493; *Osborn* v. *Gillett*, L. R. 8 Ex. 88. This rule formed part of our law also, and prevails to-day except as modified or changed by

statute. *Conn. Mut. Life Ins. Co.* v. *New York &. N. H. R. Co.*, 25 Conn. 265.

The operation of these two rules frequently caused great hardship in cases of personal injuries resulting in death, and to remedy this hardship in such cases, the rules in question, towards the middle of this century, began to be abrogated or modified by legislation. Lord Campbell's Act, passed in England in 1846, may be said to have led the way in this kind of legislation; and it was speedily followed in this country by Acts having in view the same general purpose as the English Act. Speaking generally, this kind of legislation may be said to have in effect abolished one or the other, or both, of these rules, with reference to the class of cases here in question. Some of the Acts provide that the decedent's cause of action against the wrong-doer shall survive, either for the benefit of his estate generally, or for the benefit of those described in the statute. Acts of this kind may be called survival Acts. By them, to a certain extent, both rules are abolished or made inapplicable. Other Acts give substantially a new cause of action to certain described beneficiaries, for loss sustained by them by the mere death of the injured person. Acts of this kind are not survival Acts, and they in effect only abolish the second of the above rules. The English Acts relating to this subject may be said to fall within the last class; 1 Ency. of Laws of England, p. 108; Pol. on Torts, pp. 59, 60, and cases cited; while our own Act falls more nearly within the first class.

Legislation upon this subject in this State began in 1848. In that year it was enacted that "actions for injury to the person, whether the same do or do not result in death, . . . shall survive to his executor or administrator, provided the cause of action shall not have arisen more than one year before the death of the deceased." Public Acts of 1848, Chap. 5, § 2. The word "actions" as here used means causes of action or rights of action. *Soule v. New York & N. H. R. Co.*, 24 Conn. 575. In 1875 the statute was changed in phraseology, and has since read and now reads as follows : " All actions for injury to the person, whether the same do or do not instanta-

neously or otherwise result in death, . . . shall survive to his executor or administrator," etc. Rev. of 1875, p. 422, § 9; Rev. of 1888, § 1008.

In 1853 another statute was passed, which provided that "if the life of any person, being a passenger, or crossing upon a public highway in the exercise of reasonable care, shall be lost" by the negligence or carelessness of any railroad company in this State, such company should be liable to pay as damages for such loss, a sum not exceeding $5,000 nor less than $1,000, to the executor or administrator, for the benefit of the persons described in the Act. The provisions of these two Acts, with some changes which it is not here important to note, are now consolidated in §§ 1008 and 1009 of the General Statutes. Among other things these sections now provide, in substance, as follows : (1) that all causes of action for injury to the person of a decedent, " whether the same do or do not instantaneously or otherwise result in death," shall survive to his executor or administrator, "provided the cause of action shall not have arisen more than one year before the death" of the decedent; (2) that the recovery shall be for "just damages not exceeding $5,000 " ; (3) that the damages recovered, whether in actions begun by the person injured in his lifetime, or by his personal representative after the death of the person injured, shall be for the benefit of the persons named in the Act ; (4) that the action shall be brought within a prescribed time.

This legislation in effect sets aside, in this class of cases, the rule expressed in the maxim, *actio personalis moritur cum persona*. *Murphy* v. *New York & N. H. R. Co.*, 30 Conn. 184, 188; *Budd* v. *Meriden Electric R. Co.*, 69 id. 272, 284; and it provides that the decedent's cause of action against the wrong-doer shall survive and be available to the executor or administrator. Furthermore, this legislation, in this class of cases, sets aside the other rule of the common law, which prevented the recovery of damages for mere loss of life. " It is a singular fact that by the common law the greatest injury which one man can inflict upon another, the taking of his life, is without private remedy. By a strange

fiction the extremity of the wrong precludes redress. Connecticut was among the first to break through this principle." *Goodsell* v. *Hartford & N. H. R. Co.*, 33 Conn. 51, 55. In thus abolishing or modifying this rule of the common law in certain cases, and so permitting a recovery in damages to be had where before there could be none, our statute may be regarded as conferring such right, either upon the person injured, and continuing it by survival in his personal representative, or as conferring it upon the personal representative upon the death of the person injured. It is not important here to determine which of these views is the correct one. In either case the right to redress arises from a wrongful act that violated the injured person's rights, and the right of the personal representative to sue thus comes through the person injured. The plain intent of our law is to give to the personal representative a right to sue for the wrong done to the person injured that caused his death. This is the construction put upon this legislation by this court from the beginning. *Soule* v. *New York & N. H. R. Co.*, 24 Conn. 575; *Murphy* v. *New York & N. H. R. Co.*, 29 id. 496, 30 id. 184; *Goodsell* v. *Hartford & N. H. R. Co.*, 33 id. 51; *Andrews* v. *Hartford & N. H. R. Co.*, 34 id. 57; *McElligott* v. *Randolph*, 61 id. 157; *Budd* v. *Meriden Electric R. Co.*, 69 id. 272.

This right is given whether death follows the wrongful act instantaneously or otherwise, by the express language of the statute. The real cause of action arises from the wrongful act; death is but the effect or consequence of the act. When that event ensues the effects of the act are, legally speaking, complete. Under the statute it makes no difference as to the liability of the wrong-doer, whether the complete effect of his act instantly follows the act, or follows it after some short interval of time. This was the meaning of the Act we think even before its phraseology was changed in 1875. See the headnote in case of *Murphy* v. *New York & N. H. R. Co.*, 30 Conn. 184, and the reasoning of the court in that case. But however this may be, it is certain that since 1875 the remedy is given to the personal representative, even in cases where death is instantaneous.

The cases cited in the defendant's brief from Massachusetts, where it is held that in cases of instantaneous death the cause of action does not survive, have no bearing upon the construction of our statute, as shown by ELLSWORTH, J., in *Murphy* v. *New York & N. H. R. Co.*, 30 Conn. 184.

Our conclusion is that in the present case the trial court erred in holding that because the death of Davis was instantaneous the plaintiff was entitled to nominal damages only; and for that error the judgment must be set aside.

This being so, the question arises whether there should be a new trial of the entire case, or whether it should be limited to the assessment of damages only. This question is complicated by the fact that the trial court has attempted, conditionally, to assess substantial damages. Its language is: "If, upon the facts, substantial damages should be awarded, I find damages should be assessed at $5,000, which I so assess." If such hypothetical and conditional assessment did not appear in the finding, it is clear that the new trial should be confined to a mere ascertainment of the *quantum* of substantial damages. The only error complained of on this appeal is that the court, on the facts found, gave nominal instead of substantial damages. No error is claimed as to that part of the finding that establishes the liability of the defendant for causing the death of Davis. The error complained of and found affects the question of damages alone, and can be corrected without disturbing that part of the finding about which no complaint is made. If, therefore, the finding had been silent as to substantial damages, the new trial should be limited to an assessment of the *quantum* of damages merely; but as the finding is not silent upon this subject, the question arises as to the effect that should be given to such conditional assessment. Is it binding and conclusive upon the parties in this case so that a new trial even as to the *quantum* of damages ought not to be granted? We think not.

All courts are required to cause the facts upon which they found their final judgments, to appear on the record. General Statutes, § 1111. Such facts are adjudicated facts, found under the responsibility of the exercise of judicial duty and

forming the basis of the judgment rendered. Facts found upon which the judgment is not based, which are in no way necessary to it, need not appear on the record, and when placed there form properly no part of it. They are not facts adjudicated by the court, and the validity of the judgment rendered is in no way affected by their presence or absence from the record.

In this case the judge was under no duty to assess the *quantum* of damages to which the plaintiff was entitled, contingently, upon a view of the law which the trial court held not to be law. In the conclusion of law reached by the court, the assessment of other than nominal damages became entirely immaterial. The conditional and hypothetical finding as to damages is the expression of the opinion of the judge upon an immaterial matter, and not an adjudication by the court upon a matter upon which its judgment was founded. *Watson* v. *New Milford Water Co.*, 71 Conn. 442, 450. Then, again, if a judge commits some error of law affecting the finding of an unnecessary and immaterial fact, it is difficult to see how the party in whose favor judgment is rendered can have the error corrected ; and if he cannot, he ought not to be in any way injuriously bound by the finding of such fact. Findings of the kind here in question are often made by committees, and also by courts upon a reservation for advice ; but in such cases the parties likely to be adversely affected by the finding are in a position to protect themselves against errors which may affect such finding. It is probably true, too, that findings have been made in this way in cases where, as in the present one, final judgment was rendered by the trial court; but if so, no question appears to have been made in this court as to the effect of the conditional finding upon a new trial. We think that the interests of justice will be best subserved by holding, in this case, that the finding as to substantial damages is not binding on the parties, and that such damages must be assessed upon the new trial.

As a new trial must be granted for the limited purpose of ascertaining the *quantum* of damages, the question would arise whether this makes it necessary to consider the ques-

tions raised in the bill of exceptions, were it not that substantially the same questions are presented upon the face of the finding.

Under the statute it is the duty of this court to consider and express an opinion on those questions, only in cases (1) where a new trial is advised, and (2) where upon that trial those questions would arise again. If the new trial is limited to the ascertainment of the *quantum* of damages, the questions presented by the bill of exceptions will not arise upon such trial, and therefore it would be unnecessary to consider them if they appeared upon the record only by means of such bill; but in fact substantially the same questions presented in the bill of exceptions appear upon the record in the finding of the trial court. That court has found all the facts on which its judgment is based, as well as the various claims of the defendant that such facts support a judgment for nominal damages only, even if the fact of instantaneous death is in law an immaterial one. The finding thus practically makes it necessary to pass upon the validity of the conclusion of negligence reached by the trial court from the facts found; for if that conclusion is not as matter of law warranted by those facts, then the plaintiff was not injured by the judgment for nominal damages and no new trial should be granted for any purpose.

The finding sets forth the facts proved in the case at great length. Many of them relate to certain duties of the defendant and the Electric Light Company, claimed to be due from each to the other, or to duties which the defendant claimed the other company owed to Davis, and consequently many of the facts found have little or no bearing upon the issues in this case, or upon the conclusion as to negligence reached by the trial court.

The important question in the case was, whether the defendant, when it undertook to cut and did cut the wires, under the circumstances set forth in the finding, was by law charged with a duty towards Davis, which duty, in doing as it did, it violated and thus caused his death.

We think the facts found, which have a material bearing

upon this question, abundantly support the conclusion that the defendant did owe a duty to Davis, and that its violation of that duty caused his death. A conclusion of this kind as to negligent conduct is not reviewable, unless it is palpably and manifestly unsupported by the facts found, and that is not the case here; indeed it is difficult to see how any other conclusion could have been reached. There is no error in law apparent on the record which vitiates the result reached upon this point.

The assumption that the cutting of the wires was the cause of the death, although it operated through the consequent crossing of other electric wires, is clearly right.

The claims as to the conflicting rights of the two companies are immaterial, and the other claims made in the case, except the claim of variance, are either immaterial or concluded by the finding of negligence.

The complaint is certainly open to the objection that it alleges an intentional wrong, and it may be, as claimed upon the trial, that it is defective in other respects, such as the statement of the precise cause of the accident. If it is to be regarded as alleging a negligent act merely, it fails to expressly allege the absence of contributory negligence on the part of the intestate.

But these matters cannot now be of any avail to the defendant. The defendant did not demur to the complaint, but suffered a default, and upon that default it gave notice that it would deny that it had either negligently or wilfully injured the intestate, and that it would offer evidence of contributory negligence. Upon the hearing in damages, which under our practice is for certain purposes a trial of the entire case, the plaintiff and defendant offered all the evidence they chose to offer upon all these matters. Both parties, all the way through, treated the complaint as one for negligence only, and no claim was made that it was anything other than a complaint for negligence. Under these circumstances, and assuming, without deciding, that the complaint is defective, the claimed variance between it and the finding cannot now avail the defendant. The objections urged, on the ground of

variance between the complaint and finding, come too late. For these reasons there should be no new trial upon the question of negligence.

The judgment of the court below is set aside, and a new trial is granted for the purpose of ascertaining and assessing the *quantum* of damages only.

In this opinion the other judges concurred.