ALBERT E. CHASE, ADMINISTRATOR (ESTATE OF LILLIAN M. CHASE) *v.* FRANCIS FITZGERALD ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued October 4, 1945—decided January 3, 1946.

*Lawrence L. Lewis,* for the appellants (defendants).

*Walter W. Smyth,* with whom was *John H. Cassidy,* for the appellee (plaintiff).

MALTBIE, C. J. The defendants appeal from the denial of motions to set aside a plaintiff's verdict on the grounds that it was against the evidence and was excessive in amount.

The jury might have found the following facts: The decedent, on October 27, 1944, having a message to deliver to the operator of a bus, planned to meet it at the junction of South Main Street, which is a

state highway running south from Waterbury, and Platts Mills Road, which enters South Main Street from the west but does not cross it. The decedent was driven by her husband in his car north toward Waterbury on South Main Street, and at about 8:45 p. m. he stopped on the extreme easterly side of the street, opposite the entrance of Platts Mills Road. The bus which the decedent intended to meet came from the west on that road and its customary stop was at a stop sign just before the intersection. It had not arrived. The decedent alighted from the car on its right side, passed around its rear end and proceeded to cross the street toward the bus stop. Her husband had turned to converse with his mother, who was sitting on the rear seat, and saw the decedent pass to the rear of the car but did not see her again until after she had been struck by the defendants' car. In a matter of seconds after she left, he heard the sound of a car and a "thump" opposite his left window. He got out of his car and found his wife lying in the middle of South Main Street, ninety-eight feet south of a point in the center of the road opposite the stop sign on Platts Mills Road. The decedent had been struck by the left side of the defendants' car, which was proceeding southerly on South Main Street. She suffered very severe injuries and lived only a few minutes.

South Main Street at the place of the accident is a straight concrete-surfaced highway forty-seven feet wide exclusive of the shoulders, with two lanes for southbound traffic and two for northbound, and with a black tar strip three feet wide in the center. The weather was clear, there was no traffic coming from the south, and there was nothing to interfere with the defendant driver's vision of the road ahead. A street light north of the intersection shed some

light over it. The concrete surface of the roadway was light colored, described by one witness as "white" or "bright." The defendant driver did not see the decedent until he was twenty or twenty-five feet away. Despite the fact that there was a sign about five hundred feet north of the intersection designating twenty-five miles an hour as the proper speed, he was driving forty-five miles or more an hour. He did not put on his brakes or change the direction of his car before striking the decedent. The jury reasonably could have concluded that he was negligent in driving his car at an excessive speed and in not seeing the decedent in time to avoid running into her.

The defendants claim that the jury could not properly have found the plaintiff free from contributory negligence. There were only two witnesses who testified that they actually saw the car strike the decedent: the defendant driver and a passenger in his car. The defendants contend that their testimony was that when the car was twenty or twenty-five feet away and proceeding in about the middle of the roadway for southbound traffic, the decedent came running slowly or "trotting" into its path and was struck by it. The defendants' claim of law is that, having produced this evidence, the burden of proving contributory negligence placed upon them by statute (General Statutes, Cum. Sup. 1939, § 1399e) was met, and that upon all of the evidence the decedent was guilty of contributory negligence as a matter of law. In support of their claim, they cite *Hawley* v. *Rivolta*, 131 Conn. 540, 544, 41 Atl. (2d) 104. In that case we inadvertently applied to the statute concerning the presumption and burden of proof as to contributory negligence the interpretation we have given the statute concerning the presumption as to a family car. General Statutes, Cum. Sup. 1935, § 1658c. They are quite

different in effect, as we said in *O'Dea* v. *Amodeo,* 118 Conn. 58, 64, 170 Atl. 486. The rule is that under § 1399e the burden of proof of contributory negligence rests throughout upon the defendant and the mere production of evidence tending to prove it does not cause the burden to revert to the plaintiff. The defendant, to prevail, must produce evidence accepted as credible by the trier and sufficient to sustain that burden. *Breed* v. *Philgas Co.,* 118 Conn. 128, 136, 171 Atl. 14; *Hatch* v. *Merigold,* 119 Conn. 339, 342, 176 Atl. 266; *LeBlanc* v. *Grillo,* 129 Conn. 378, 384, 28 Atl. (2d) 127. The jury could have refused to credit the testimony that the decedent ran out from the side of the road into the path of the car and, with no further evidence as to the immediate circumstances of the accident, have concluded that the defendants had failed to sustain the burden of proving her negligent.

The defendants make a further claim that the verdict for $9000 was excessive. The decedent was fifty-one years of age. The normal life expectancy for a woman of that age is 19.47 years. She married the plaintiff in 1941. The jury could also have found these further facts: She had been previously married and had brought up a family of seven children. She had later become estranged from her husband and had been employed as a housekeeper almost up to the time of her marriage to the plaintiff. At that time she had accumulated savings to the amount of about $100. After her marriage, she kept house for her husband and also largely took care of his mother, a woman of advanced age and in ill health, who lived next door. She had been troubled to some extent with gallstones but two or three months before the accident had been operated upon for them. At the time of the accident she was generally in good health and could work as well as anyone except that trouble

with her feet prevented her standing long at a time and interfered somewhat with her getting about on them.

The situations presented by *Farrell* v. *L. G. De-Felice & Son, Inc.*, 132 Conn. 81, 86, 42 Atl. (2d) 697, by this case and by *Mickel* v. *New England Coal & Coke Co.*, argued before us at the November term, have shown us, in the light of arguments of counsel, the necessity of reviewing our decisions as to the rule of damages in death cases. Particularly are we concerned about the statement in *Reynolds* v. *Maisto*, 113 Conn. 405, 406, 155 Atl. 504, where we said: "Damages under our statute are not estimated from the standpoint of the loss caused by the death of the decedent to those who will ultimately benefit from a recovery, but they represent an increment of value coming to his estate as of the moment of his death measured by the economic loss caused by it." See also *White* v. *L. Bernstein & Sons, Inc.*, 123 Conn. 300, 302, 194 Atl. 723. If this rule is read in the light of the charge of the trial court given qualified approval in *Schrayer* v. *Bishop*, 92 Conn. 677, 682, 104 Atl. 349, it means that the measure of damages is the amount which the decedent would probably have accumulated and left as a part of his estate had he lived. A strict application of such a rule would bring about such results as these: Where a man earned a substantial income but had no dependents and therefore was able to accumulate considerable savings, damages for his death might well amount to a large sum, whereas in the case of a man who, earning a like income, had a large family, the expense of whose support made it impossible for him to save any considerable amount, the damages would be small; and so would the award in the case of a housewife who devoted all her time and energy to her family and earned no

money. Such results do not accord with the requirement in the statute that "just damages" shall be given. General Statutes, Cum. Sup. 1939, § 1430e.

Under our statute, differing from Lord Campbell's Act in England and statutes in this country of like purport, the cause of action "which the executor or administrator is permitted to pursue is not one which springs from the death. It is one which comes to the representative by survival. The right of recovery for the death is as for one of the consequences of the wrong inflicted upon the decedent." *Kling* v. *Torello,* 87 Conn. 301, 305, 87 Atl. 987; *Broughel* v. *So. New England Tel. Co.,* 72 Conn. 617, 623, 45 Atl. 435; *Mezzi* v. *Taylor,* 99 Conn. 1, 7, 120 Atl. 871; *Wilmot* v. *McPadden,* 78 Conn. 276, 284, 61 Atl. 1069; *Bunnell* v. *Waterbury Hospital,* 103 Conn. 520, 529, 131 Atl. 501; *Davis* v. *Margolis,* 108 Conn. 645, 648, 144 Atl. 665; *Shaker* v. *Shaker,* 129 Conn. 518, 520, 29 Atl. (2d) 765. It is a necessary corollary that damages under our statute are not based upon any loss caused to the family or relatives of the deceased to whom any damages recovered are to be distributed under § 4983 of the General Statutes. *Goodsell* v. *Hartford & N. H. R. Co.,* 33 Conn. 51, 56; *McElligott* v. *Randolph,* 61 Conn. 157, 158, 22 Atl. 1094; *Broughel* v. *So. New England Tel. Co.,* 73 Conn. 614, 619, 48 Atl. 751; *Kling* v. *Torello,* supra. As the cause of action comes to the executor or administrator by survival and is a continuance of that which the decedent could have asserted had he lived, the damages may include compensation for his pain and suffering while he lived and his medical, surgical and hospital bills, but not funeral expenses and like charges on the estate which the decedent could not have recovered had he lived. *Farrell* v. *L. G. DeFelice & Son, Inc.,* supra; *Reynolds* v. *Maisto,* supra. As regards death, damages for it can-

not be based upon the value which a man would place upon his own life or upon any sentimental considerations. *Broughel* v. *So. New England Tel. Co.,* 73 Conn. 614, 619, 48 Atl. 751; *Demonde* v. *Targett,* 97 Conn. 59, 64, 115 Atl. 470.

So far there is no difficulty in determining the rule of damages. When, however, we review our decisions as to the sum of money to be awarded as damages for the death,[1] we find it difficult to harmonize the statements in them. This has led us to review the basis of such an award as consequent upon the nature of the cause of action created by the statute. It is, as we have said, a continuation of that which the deceased would have had if he had lived. He could have recovered for pain and suffering and for any expense which resulted from the injury. He could also have recovered for any injury; the loss from that cause, aside from certain subjective elements, would consist essentially of the impairment or destruction of his ability to carry on his wonted activities; *Atlanta Street Railroad Co.* v. *Jacobs,* 88 Ga. 647, 652, 15 S. E. 825; *Mobile & O. R. Co.* v. *George,* 94 Ala. 199, 222, 10 So. 145; *Perrigo* v. *St. Louis,* 185 Mo. 274, 289, 84 S. W. 30; 4 Sutherland, Damages (4th Ed.), p. 4653; 15 Am. Jur. 486; and, as incidental to that, he could have recovered for the destruction or any limitation upon his earning capacity. *Silverman* v. *Springfield Advertising Co.,* 120 Conn. 55, 58, 179 Atl. 98. Indeed, where he is gainfully employed, loss of earning capacity could well be the principal element of recovery resulting from the injury.

---

[1] Cases in addition to those cited in the opinion are *Nelson* v. *Branford Lighting & Water Co.,* 75 Conn. 548, 552, 54 Atl. 303; *Hesse* v. *Meriden S. & C. Tramway Co.,* 75 Conn. 571, 576, 54 Atl. 299; *Lane* v. *United Electric Light & Water Co.,* 90 Conn. 35, 36, 96 Atl. 155; *Harbison* v. *Barwinsky,* 100 Conn. 602, 604, 124 Atl. 223.

When the injured person dies, pain and suffering, the expenses of illness and the like come to an end, and damages for the death would not include these elements. But there remains the fact that death has deprived the deceased of any further opportunity to carry on his accustomed activities, gainful or otherwise, and here, too, the destruction of earning capacity may well be the principal element of recovery. *Broughel* v. *So. New England Tel. Co.,* 73 Conn. 614, 619, 48 Atl. 751; *Ratushny* v. *Punch,* 106 Conn. 329, 338, 138 Atl. 220. To measure damages upon the basis of the destruction of earning capacity is very different from awarding a sum intended to represent the amount which a decedent would have earned and left as a part of his estate. *Imbriani* v. *Anderson,* 76 N. H. 491, 492, 84 Atl. 974. The salary or wages he had been earning before the injury which caused his death would be evidence of the value of that capacity, but not conclusive, and his general experience as a wage earner and his qualifications for conducting a gainful occupation would also be proper considerations. *Hayes* v. *Morris & Co.,* 98 Conn. 603, 607, 119 Atl. 901. The loss would necessarily be limited in time to that period which the trier might find to be the probable length of life of the deceased had he not been killed; *Sims* v. *Smith,* 115 Conn. 279, 284, 161 Atl. 239; and the trier must consider the extent to which the ordinary vicissitudes of life would have been likely to affect the decedent's continued enjoyment of his faculties, and, as regards any loss due to the destruction of earning capacity, the fact that a present cash payment will be made instead of the sums which, had he lived, would have been received by him at periodic intervals in the future. *Jackiewicz* v. *United Illuminating Co.,* 106 Conn. 310, 314, 138 Atl. 151.

The rule for measuring damages resulting from

death may then be briefly summarized as follows: It is that sum which would have compensated the deceased so far as money could do for the destruction of his capacity to carry on life's activities as he would have done had he not been killed, including the destruction of his earning capacity, for such time as he would probably have lived, but with due allowance for the effect which the ordinary vicissitudes of life might have had upon his continued enjoyment of those capacities and, as far as destruction of earning capacity is concerned, for the fact that a present payment will be made in lieu of sums which, had he lived, would have been received at periodic times in the future.

In this state "damages due to the incapacity of a wife by reason of a personal injury are recoverable by her and not her husband." *Hansen* v. *Costello,* 125 Conn. 386, 390, 5 Atl (2d) 880. The decedent at the time of her death was not gainfully employed and there is no evidence indicating that she was likely thereafter to become a wage earner. In estimating damages properly allowable for her death, loss of earning capacity might not be a very material element to be considered. There remains, however, the destruction of her capacity to carry on her life's activities as wife and homemaker in the way she would have done had she lived. The determination of just damages for the death of such a one requires a "fair consideration of all the evidence tending to show the condition, capacity, ability and efficiency of the deceased in the discharge of her domestic duties, not only as a laborer performing menial service, but also as the housewife and head and administrator of the internal affairs of her home. . . . The best that can be done is to prove the facts and circumstances of the woman's life and service in these capacities, her age, health and strength, her expectancy of life, and all that may ap-

pear to enlighten the minds and aid the judgment" of the trier in reaching his decision. *Bridenstine* v. *Iowa City Electric Ry. Co.,* 181 Iowa 1124, 1134, 165 N. W. 435; see also *Perrigo* v. *St. Louis,* supra, 290; *Rodgers* v. *Boynton,* 315 Mass. 279, 281, 52 N. E. (2d) 576; *Donoghue* v. *Smith,* 114 Conn. 64, 66, 157 Atl. 415; *Ward* v. *General Ice Cream Corporation,* 118 Conn. 363, 364, 172 Atl. 781. In *O'Connor* v. *Zavaritis,* 95 Conn. 111, 116, 110 Atl. 878, we refused to find error in the action of the trial court in sustaining a verdict of $10,000, the maximum amount then allowed by the statute, as damages for the death of a young married woman and housewife, although, to be sure, she lived some three-quarters of an hour after the accident, during which time she was "to some extent at least, conscious," and "physical pain and suffering must have attended the injury." In *Demonde* v. *Targett,* supra, 66, we refused to interfere where the trial court sustained a verdict of $5291 for the death of a married woman and housewife, although there was some evidence of her activities in her husband's business. The verdict in the instant case, while large, was not so excessive as to shock the conscience or indicate that the jury were influenced by improper motives. *Quackenbush* v. *Vallario,* 114 Conn. 652, 655, 159 Atl. 893; Conn. App. Proc., p. 153.

There is no error.

In this opinion the other judges concurred.