Frank T. MOFFA, Jr., Adm'r of Estate of Andrew Amendola, Plaintiff,

v.

PERKINS TRUCKING COMPANY, Inc., Runard's Motor Express, Inc., & Louis Redenti, Defendants.

Civ. A. No. 8556.

United States District Court
D. Connecticut.

Dec. 13, 1961.

Jacobs, Jacobs, Jacobs, & Jacobs, by Stanley A. Jacobs and Ira Grudberg, New Haven, Conn., for plaintiff.

John C. Flanagan, New Haven, Conn., for defendants.

CLARIE, District Judge.

All of the defendants seek to set aside a plaintiff's jury verdict and judgment thereon and request an order granting a new trial. The grounds of such motion are that the verdict was excessive, contrary to law, and made under the influence of passion, prejudice, and ignorance of the law; a further claim was that the court erred in failing to charge the jury in substance that any award to the plaintiff would not be income to the plaintiff within the meaning of the Federal Income Tax law.

The plaintiff administrator of the Estate of Andrew Amendola brought this action to recover damages for the death of the decedent, which resulted from injuries sustained when a vehicle owned and operated by him was struck and crushed by a tractor-trailer truck. About 4:30 A.M., on April 30, 1960, the decedent was driving home, after having completed his work on the night shift as a compositor and make-up man at the Wilson H. Lee Company in the Town of Orange. At the intersection of Route #1 (otherwise described as the Old Boston Post Road) and Racebrook Road, the decedent had brought his vehicle to a full stop in the extreme right-hand lane of a four-lane highway, in compliance with the red traffic light signal facing him at said intersection; his front and rear lights were lighted and he had remained stationary for some time before the impact.

The defendant, Redenti, was the admitted agent and employee-operator of a tractor-trailer truck approaching the intersection from the same direction as the decedent. His truck was fully loaded, having a gross weight of about 62,320 pounds, and the jury could have found that he was travelling approximately 50 miles per hour in a 40-mile zone, as he approached the intersection where the plaintiff's decedent was stopped. Without any known reason the tractor-trailer did not slow down; it struck the rear of the 1952 Cadillac Sedan and crushed the car as if it were an empty egg shell. The truck careened off the highway 274 feet beyond the point of impact, until it came to rest on top of the chassis of the passenger sedan, its forward momentum expended, after tearing a gaping hole in the cement wall of a furniture store building. The body of the decedent was ultimately found underneath the truck. The front tie-rod of the truck rested across the back of his skull and his face pressed against the wall of the store building. The evidence indicated, that death was instantaneous.

The nature of this action was not unusual, except that in addition to a request for $300,000.00 compensatory damages, there was a request for an additional sum of $125,000.00 exemplary damages. This latter demand was based upon an allegation of reckless and wanton misconduct on the part of the defendants. A separate amendment to the complaint was filed, pursuant to a pretrial order, wherein the plaintiff demanded that the trial court, in its discretion pursuant to Section 14–295 of the Connecticut General Statutes, 1958 Revision, award to the plaintiff double or treble damages. This latter amendment,

or its substance, was never called to the jury's attention at any time, nor did it come into their possession; it was as a matter of law only for consideration by the court and the jury did not know of its existence, until after the verdict had been received by the clerk and accepted by the court.

The jury awarded the plaintiff $150,-000.00 compensatory damages; it awarded no exemplary damages. This fact was confirmed by the form of the verdict, which separated the item of compensatory damages from exemplary damages.

For the sole purpose of determining whether or not the finding of facts warranted the court's considering the applicability of the statutory provisions of the double or treble damage law, both counsel agreed upon the submission to the jury of interrogatories. These were in the form of four (4) questions, which in substance inquired, did the driver fail or neglect to conform to the provisions of Section 14–232 of the General Statutes of Connecticut, 1958 Revision, which provides that the driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the highway until safely clear of the overtaken vehicle. The jury's answer was "yes". A second part of the same question inquired, if so did the failure and neglect of Louis Redenti to conform to the provisions of the statute cause the injuries and death of the plaintiff's decedent. The jury's answer was "yes."

The second phase of the interrogatories set forth that Section 14–240 of the General Statutes of Connecticut, 1958 Revision, provided in part, that no driver of a motor vehicle shall follow another vehicle more closely than is reasonable and prudent, having regard for the speed of such vehicle, the traffic upon and the condition of the highway and weather conditions. The question presented to the jury was, did the defendant, Louis Redenti, fail and neglect to conform to this provision of the General Statutes.

The jury's answer was "yes." If so, did his failure and neglect to conform to this provision of the General Statutes cause the injuries and death of the plaintiff's decedent? The jury's answer was "yes".

While this phase of the case is not directly involved in the motion, the jury's finding that these two statutory violations were the proximate cause of the accident is an important external facet, that might have influenced them in determining the size of the ultimate award.

Before considering the merits of the jury's verdict, the liability aspects of the case should be briefly reviewed. While the defendants did not admit liability, apparently because of the request for exemplary damages, they presented no witnesses or evidence whatsoever. An excerpt from the copy of the judgment evidencing the defendant operator's plea of guilty to a charge of negligent homicide arising out of his conduct in this case and resulting conviction, was read to the jury by agreement of counsel. There was never any explanation to the jury by any evidence during the trial which did in any manner explain or attempt to excuse the defendant driver's conduct.

A colorable factor which must be considered to fully understand the circumstances under which the case was considered was the exemplary damage feature. While the jury by its verdict denied exemplary damages, it was exposed to evidence on which the claim of reckless and wanton misconduct was based and it was also exposed to evidence relating to legal expense to the plaintiff in litigation of this kind.

■■ Under Connecticut law where exemplary damages are permitted, such damages are limited to the costs of litigation less taxable costs, but within that limitation the extent to which they are awarded is in the discretion of the trier. Such damages are not properly recoverable in the absence of evidence as to the elements entering into a determination of them, except for those items of taxable costs of which the trial court can

take judicial notice. Chykirda v. Yanush, 1945, 131 Conn. 565, 568, 569, 41 A.2d 449. Thus the plaintiff offered evidence, based upon the New Haven County Bar Association's minimum rates, to the effect that the minimum contingent counsel fees in a matter of this kind shall be 33⅓% of the recovery. The jury by their action in denying exemplary damages, denied to the plaintiff any allowance for the expenses of this litigation; the court must conclude they intended the results of their deliberative decision. Against this background, the defendants claim that the verdict for compensatory damages was excessive.

The decedent was 35 years of age. The normal average life expectancy of a man of that age is 35.68 years. He married in 1953, and had a wife and two children, the elder age eight (8) years, and the younger four (4) years. It was a happy marriage and he enjoyed the company of his family. He was a journeyman printer, compositor and make-up man in a commercial printing establishment; he had been steadily employed by his present employer since 1953. He had accumulated a bank account of $4,-000.00 during the early years of his marriage, during part of which time he was an apprentice working up to a journeyman status. He had always enjoyed excellent health, his parents were living and in excellent health as were several of his brothers and sisters. His habits were steady and moderate. There was evidence by a qualified actuary, which the jury could have believed, that his life expectancy was higher than the average of individuals in his age group. There was also evidence concerning his ability and willingness to learn and improve, all of which would have bearing upon the reasonable probability of increased future earnings. For the four (4) month period prior to his death, the decedent had earned $2,556.54, including $249.50 vacation pay. Wage records (plaintiff's Exhibit Z) indicated that his weekly base pay (without overtime) from January to December 1958 was $118.60; from December 1958 to October 1959

was $122.00; from October to May 1960, was $124.75 (plaintiff's Exhibit Y).

Further evidence as to potential future earnings was evinced by (plaintiff's Exhibit AA1) a Union wage agreement of which the decedent was a part, which provided basic weekly wages on the night shift from September 23, 1960 to September 22, 1961 would have been $129.-00; effective September 23, 1961 to September 21, 1962 they would have been $133.00.

The jury could have found evidence of additional income benefits in the form of a pension plan paid for by the employer, including a disability pension, group life insurance, sick benefits, overtime and vacation and holiday pay. There was evidence that the fringe benefits, not including overtime and vacation pay, amounted to approximately $8.80 per week. It should be noted that while retirement is ordinarily expected at 65, there was evidence that in this trade there are employees who are permitted to work part-time after that age.

█ This accident having occurred in Connecticut, it is incumbent on the court to consider the elements essential to a death action recovery in this state and the rules governing the ascertainment of damages. The claim for recovery is based upon a statute of the State of Connecticut, namely Section 52–555 of the 1958 Revision which, in part, provides: "In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, * * * ". Because of the instantaneous death of the decedent, the only special damage in this case would be the funeral bill in the amount of $1,600.00.

█ The matter in issue in this case concerns the proper assessment of damages for instantaneous death, under the

aforesaid wrongful death statute. Under our statute the cause of action which the executor or administrator is permitted to pursue is not one which springs from the death. It is one which comes to the representative by survival. The right of recovery for the death is one of the consequences of the wrong inflicted upon the decedent. The cause of action is a continuation of that which the decedent could have asserted had he lived. Damages for wrongful death, as such, are allowed as compensation for the destruction of the decedent's capacity to carry on life's activities, including his capacity to earn money, as he would have, if he had not been killed. The Connecticut court has consistently pointed out, that damages for wrongful death are not restricted to those arising from the mere destruction of earning capacity. Some damages are recoverable for death itself, even though instantaneous, without regard to earnings or earning capacity. Floyd v. Fruit Industries, 1957, 144 Conn. 659–670, 136 A.2d 918, 63 A.L.R.2d 1378; Chase v. Fitzgerald, 1946, 132 Conn. 461, 467, 470, 45 A.2d 789, 163 A.L.R.2d 247.

■ In measuring a person's actual loss from a permanent and total destruction of earning capacity, whether by death or injury, there is an important factor which must be offset against probable net earnings. That factor is any saving in income tax liability which can properly be attributed to a cessation of earned income. Obviously, if loss to the decedent had he lived is the test, as it must be under the survivorship theory of our law, the probable income taxes of the decedent must be deducted from his probable lifetime net earnings to get any fair or proper basis for assessing reasonable compensation for the loss caused by the destruction of his earning capacity. It would be difficult to conceive of a more unjust, unrealistic or unfair rule than one which would lead a jury to base their allowance of reasonable compensation for the destruction of earning capacity on the hypothesis that

no income taxes would be paid on net earnings. For all practical purposes, the only usable earnings are net earnings after payment of taxes. Supra 144 Conn., 671, 672, 136 A.2d 918.

In that case, the court went on to point out, that in some jurisdictions, evidence of income taxes has been held inadmissible, usually on the ground that it related to a factor too uncertain, conjectural or speculative in character to be of benefit in the assessment of damages for the permanent impairment or destruction of earning capacity. The factor in question is no more uncertain, speculative or conjectural than many of the other factors which must be, and in this case were submitted to the consideration of the jury. Sims v. Smith, 1932, 115 Conn. 279, 285, 161 A. 239.

■ Damages for destruction of earning capacity are not to be measured by the probable net savings of accumulations of the decedent during his lifetime. Chase v. Fitzgerald, 1946, 132 Conn. 461, 469, 45 A.2d 789; Mickel v. New England Coal & Coke Co., 1946, 132 Conn. 671, 675, 47 A.2d 187, 171 A.L.R. 1001. However, evidence as to savings is admissible as part of the over-all picture of the decedent's activities which the parties in a wrongful death action are permitted to portray. McKirdy v. Cascio, 1955, 142 Conn. 80, 85, 111 A.2d 555.

■ The probable cost of future "personal living expenses" must be deducted from the allowance otherwise made as reasonable compensation for the total destruction of his capacity to carry on life's activities. Personal living expenses mean those expenses which, under the standard of living followed by a given decedent, would have been reasonably necessary for him to incur in order to keep himself in such a condition of health and well being that he could maintain his capacity to enjoy life's activities, including the capacity to earn money. Personal expenses would not ordinarily include recreational expenses, nor that proportion of living expenses prop-

erly allocable to the furnishing of food and shelter to members of his family other than himself. 144 Conn. 674, 675, 136 A.2d 918, supra.

■ Evidence as to the decedent's hobbies and recreations would be admissible to show the loss suffered by destruction of his capacity to carry on life's activities and, to the extent that the proof warranted, would presumably operate to enhance the amount of the verdict. Fairbanks v. State, 1956, 143 Conn. 653, 659, 124 A.2d 893. The decedent was a family man; he worked around the home, maintained the yard and painted and decorated his apartment. He spent much time with his children, taking them to the beaches, the parks, and places of interest.

■ The court charged the jury on every one of the foregoing matters which were before them for consideration. The only charge denied was #8 of the defendant's request to charge which stated, "You are instructed as a matter of law that any award to the plaintiff in this case is not income to the plaintiff within the meaning of Federal Income Tax Law. If you find that the plaintiff is entitled to an award of damages you are to follow the instructions already given by the Court in measuring those damages and in no event should you either add to or subtract from that award on account of Federal Income Taxes". The question is whether or not the court erred in refusing this request to charge.

In the Second Circuit, McWeeney v. New York N. H., H. R. R., 282 F.2d 34, as recently as July 29, 1960, in a split decision, the court held that it was not reversible error for the trial court to refuse such a charge. It should be noted in passing that the McWeeney case also ruled upon the trial court's denial in that case to give an instruction, that in calculating future loss of earnings, the jury should consider only the employee's net income after the deduction of income taxes. The Circuit Court of Appeals sustained the trial court's ruling in refusing to so charge.

In the present case, the court did charge the jury, in accordance with the Connecticut rule, that Federal Income taxes should be deducted from future earnings in computing the employee's future loss of net income. On this question there is no controversy. The defendant, however, claims error, because he did not receive the benefit of both aspects of the charge. Consistent with the Circuit Court's decision in the McWeeney case, the trial court observed no evidence or circumstances to indicate that any cautionary instruction of this kind was needed. Hall v. Chicago & N. W. Railway Co., 5 Ill.2d 135, 125 N.E.2d 77, 50 A.L.R.2d 661 (1955); Maus v. New York, Chicago & St. Louis Rd. Co., 165 Ohio St. 281, 135 N.E.2d 253 (1956); Wagner v. Illinois Central R. R. Co., 7 Ill.App.2d 445, 129 N.E.2d 771 (1955); Missouri-Kansas-Texas R. Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931 (1956); Bracey v. Great Northern Railway Co., 343 P.2d 848 (Montana 1959); Mitchell v. Emblade, 80 Ariz. 398; 298 P.2d 1034 (1956); Atherly v. MacDonald, Young & Nelson, Inc., 142 Cal.App.2d 575, 298 P.2d 700 (1956); Atlantic Coast Line v. Brown, 93 Ga.App. 805, 92 S.E.2d 874 (1956); Briggs v. Chicago Great Western Railway Co., 248 Minn. 418, 80 N.W. 2d 625 (1957).

■ In the light of all of the elements essential and proper to be considered by a jury in this death action, under Connecticut law, was the ultimate verdict a just one? "When it does not affirmatively appear that the jury were influenced by [sympathy]. partiality, prejudice or mistake of law or fact, as by some circumstance which could improperly influence their deliberations or by a disregard of proper instructions or by an erroneous ruling of law, the question is whether the amount awarded is so large or so small as to offend the sense of justice and to compel a conclusion that the jury were moved by considerations not properly in the case." Szela v. Johnson Motor Lines, 1958, 145 Conn. 714, 718, 146 A.2d 910, 913. In the Szela case, the plaintiff's decedent was 31

years old; he was survived by a widow and three children; he was earning $83.-00 per week; and his life expectancy was 41.58 years. The jury awarded $75,-000.00 damages. The court refused to set it aside.

Another recent Connecticut death case, Fairbanks v. State, 1956, 143 Conn. 653, 124 A.2d 893, concerned a 29-year old housewife, with a life expectancy of 40.55 years. She was unemployed at the time of the accident, except for her duties as a homemaker; however, evidence was admitted to the effect that as soon as her two older boys were in school, she expected to return to the practice of physiotherapy. The salary range for this profession was $3500.00 to $4900.00 per year. In that case, death was not instantaneous, the decedent lived five (5) days. The jury awarded her estate $75,-000.00. The court refused to set aside the verdict.

In the case of Mastej, Admx. v. Graveline, District of Connecticut, Civil Action No. 5313, April 16, 1957, tried to the court, the decedent, a 50-year old baker, earning $125.00 weekly take-home pay from two jobs, was awarded approximately $103,000.00 by the court as reasonable compensation. His life expectancy, earnings record and potential future earnings do not approach the facts in the case presently before the Court.

Having determined that the life expectancy of the decedent was 35.68 years, and after offering his 1957, 1958, 1959, and 1960 Federal Income Tax Returns showing gross wages less paid income taxes, and after offering evidence on fringe benefits, average yearly emoluments and the ability and potential capabilities of the decedent, a qualified actuary having been inquired of as to whether or not he had an opinion as to what figure, reduced to present value, would compensate decedent for his diminished earning capacity, after deducting income taxes, taking into account the fringe benefits and his average yearly income, and taking into account his chances of living according to the mortality table to enjoy these payments, the actuary stated the figure to be $142,-058.00. This figure was computed at a four per cent (4%) discount rate. The three per cent (3%) rate would have increased the amount to $159,000.00. The jury was instructed to deduct the living expenses of the decedent during his life expectancy. There was evidence in this case concerning the decedent's standard of living, which could be considered by the jury in arriving at a fair and just conclusion.

The jury also could consider other factors in the light of the evidence. The foregoing computation was figured on a production working life to age 65, whereas his life expectancy was age 70.68, and the actuary testified the decedent in all reasonable probability would have lived longer. A part-time job might have been available to him at the printing establishment even after age 70, it having been testified that some were employed in their late seventies.

In cases cited by defendants where lesser verdicts were compared or a remittitur ordered, they can be distinguished on the basis of lower earnings, shorter life expectancy, a history of personal instability or lack of steady employment, or an attempt to apply a statute of a different state where a different set of values and measurements were used.

The court holds in this case, that while the amount of the verdict is substantial, and might well be considered as at the top of the bracket within which the jury's discretion and judgment should be upheld, the fact that it is at the top of such bracket does not warrant the court's interference on the ground that it is excessive. The court, in a civil jury matter of this kind, is always close to the case and can well evaluate any situation, when undue sympathy, partiality, prejudice or mistake of law intervenes to do an injustice. Such is not the case in this instance.

The Motion for a new trial is denied.