Rosemarie A. PERRY, as Administratrix of the Estate of Michael Perry, Deceased, Plaintiff-Appellee,

v.

ALLEGHENY AIRLINES, INC., Defendant-Appellant,

No. 111, Docket 73-1791.

United States Court of Appeals, Second Circuit.

Argued Nov. 19, 1973.

Decided Jan. 8, 1974.

See also Jud.Pan.Mult.Lit., 343 F. Supp. 951.

Wesley W. Horton, William R. Moller, Hartford, Conn. (Regnier, Moller & Taylor, Hartford, Conn., of counsel), for defendant-appellant.

Lee S. Kreindler, New York City (Melvin I. Friedman, Milton G. Sincoff, Kreindler & Kreindler, New York City, of counsel), for plaintiff-appellee.

Before LUMBARD, MANSFIELD and MULLIGAN, Circuit Judges.

MANSFIELD, Circuit Judge:

In this diversity wrongful death action appellant, Allegheny Airlines, Inc., appeals from a judgment ordering it to pay $369,400 to appellee, Rosemarie A. Perry, administratrix of the estate of Michael Perry, her late husband, who was one of the passengers killed when appellant's plane crashed in fog on June 7, 1971, while approaching the New Haven Airport. We affirm.

Since liability was conceded, the only issue for resolution in the proceedings below was the question of damages, for which Connecticut provides a somewhat different theory and measure of recovery than that authorized in those

jurisdictions which have enacted wrongful death statutes along the lines of Lord Campbell's Act. Under Connecticut's statute recovery is measured by the value to decedent of his life rather than the monetary loss to his next of kin or estate. See Chase v. Fitzgerald, 132 Conn. 461, 45 A.2d 789 (1946).

At the time of his death Michael Perry was an engineer employed as a welding supervisor by the Electric Boat Division of the General Dynamics Corporation. He had been working for General Dynamics for approximately six years and prior to his death was earning approximately $18,600 after several promotions and merit increases. During presentation of the plaintiff's case in chief there was testimony by James Cameron, who had been Michael Perry's immediate supervisor in the Electric Boat Division, and by Vincent Grybauskas, who was Compensation and Management Relations Commissioner for the Division, concerning Perry's salary at the time of his death, his prospects for promotion, and his prospective future earnings both with and without future promotions. An economist, Dr. Richard Martin, then testified that based on the figures introduced through Cameron and Grybauskas and on certain assumptions concerning future rates of inflation and interest, he estimated that the net economic loss (present value) caused by the wrongful death was $535,000. Besides this and other evidence as to net economic loss to the decedent, plaintiff introduced evidence as to Perry's lifestyle (including his numerous family, recreational, social and religious activities), his pain and suffering before death, and his funeral expenses. The jury ultimately returned a verdict of $369,000 for the plaintiff, and appellant's motion to have this verdict set aside as excessive was denied.

At the outset of the trial appellant moved, pursuant to a recently approved amendment to the Connecticut state constitution,[1] to have the court's questioning of veniremen supplemented by personal questioning by counsel. This motion was denied, but the court ultimately put to the veniremen all the questions requested by appellant. The court also informed appellant that it would not be permitted to introduce any evidence as to any insurance proceeds paid to decedent's survivors by reason of workmen's compensation or other accident policies paid for by decedent.

Appellant contends that the state constitutional amendment was binding on the district judge under Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1937), and that the failure to follow it was reversible error. In appellant's view the amendment involves a matter of substance. He argues that the failure to apply it could significantly affect the results in particular cases and encourage forum shopping. We disagree. In Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Supreme Court declined the invitation to extend Erie into areas governed by the Federal Rules of Civil Procedure, stating:

> "The Erie rule has never been invoked to void a Federal Rule.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> "Erie and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules."

The matter of *voir dire* is governed specifically by Rule 47(a), F.R.Civ.P.,[2] and

---

1. The provision, which was adopted by popular vote on November 7, 1972, provides in pertinent part:
 "In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. *The right to question each juror individually*

*by counsel shall be inviolate.*" Art. 1, § 19. (Emphasis supplied)

2. Rule 47(a) provides in pertinent part:
 "Examination of Jurors. The court may permit the parties or their attorneys to conduct the examination of prospective jurors or may itself conduct the examination."

Rule 12(c) of the Connecticut Federal Local Court Rules,[3] which preserve the trial court's discretion as to who should conduct it. These procedural rules are essentially "housekeeping" in nature. They transgress neither the terms of the Enabling Act, 28 U.S.C. § 2072 (1970), nor constitutional restrictions. Cf. Sibbach v. Wilson & Co., 312 U.S. 1, 13–15, 61 S.Ct. 422, 85 L.Ed. 479 (1940). In any event, we find no prejudice from the trial judge's ruling as to the conduct of the *voir dire* since he asked all the questions which appellant requested. While we are sympathetic to appellant's plea that the right of plaintiff, a Connecticut citizen, to bring this diversity suit in the federal rather than state court is "ironic in light of the original reason for diversity jurisdiction," the remedy lies with Congress, which presently has before it legislation designed to eliminate the "in-state" plaintiff's right to invoke federal jurisdiction. See Hearings on the Federal Court Jurisdiction Act of 1971, S. 1876, 92nd Cong., 1st Sess., pt. 1 (1971); Friendly, Federal Jurisdiction: A General View 139–52 (1973); H. Hart & H. Wechsler, The Federal Courts and The Federal System 1053–59 (P. Bator, P. Mishkin, D. Shapiro & H. Wechsler eds. 1973).

 Applying the "collateral source" rule, which precludes evidence by the defense of compensation to a plaintiff from an independent source on account of the accident forming the basis of the suit, the trial court excluded evidence that decedent's survivors received over $150,000 in accident insurance and workmen's compensation benefits. Appellant argues that the evidence

should have been received. We disagree. The district court's ruling is in accord with Connecticut precedent and authorities elsewhere. Compare Gorham v. Farmington Motor Inn, Inc., 159 Conn. 576, 271 A.2d 94 (1970), and Lashin v. Corcoran, 146 Conn. 512, 152 A.2d 639 (1959), with Lobalzo v. Varoli, 409 Pa. 15, 185 A.2d 557 (1962), and Long v. Landy, 35 N.J. 44, 171 A.2d 1 (1961). The suggestion that evidence of insurance proceeds was admissible to show mitigation of loss to his estate erroneously assumes that the amount he would have left as his estate is relevant. The test is not the size of his estate but the destruction of his earning capacity, which is one element to be considered in determining the value to him of his life. See Chase v. Fitzgerald, *supra*, 45 A.2d at 792. Appellant, however, further contends that the Supreme Court of Connecticut would, if faced with the question, depart from the collateral source doctrine in wrongful death cases because, unlike most other jurisdictions, Connecticut allows evidence in such cases concerning probable income taxes on lost future earnings. See Floyd v. Fruit Industries, Inc., 144 Conn. 659, 136 A.2d 918 (1957). But the admissibility of evidence regarding income taxes is a much closer question and does not present the general equitable considerations underlying the collateral source rule, at least as it applies to insurance proceeds.[4] Only recently, for instance, Judge Lumbard urged a re-examination of this court's holding in McWeeney v. New York, N.H. & H.R.R. Co., 282 F.2d 34 (2d Cir.), cert. denied, 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93 (1960), that the jury may

---

3. Local Rule 12(c) provides:
 "Examination of Jurors. When empaneling a jury for a particular case the judge will ordinarily examine the jurors by interrogatories to the panel or to individual jurors."

4. "The reason for the rule [is that] . . . 'it is more just that the injured person shall profit . . . rather than

the wrongdoer shall be relieved of his full responsibility of his wrongdoing.' Grayson v. Williams, 256 F.2d 61, 65 (10th Cir.)." Gorham v. Farmington Motor Inn, Inc., 159 Conn. 576, 271 A.2d 94, 96 (1970).

See also S. Speiser, Recovery for Wrongful Death § 6.8 at 476–77 (1966).

not take into consideration income tax in making an award in a suit for personal injuries under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60 (1970). See Blake v. Delaware & Hudson Railway Co., 484 F.2d 204, 208 (2d Cir. 1973) (dissenting opinion).

■■ The trial court's admission of Dr. Martin's estimate as to total economic loss from the wrongful death was proper since his computation amounted merely to an arithmetical calculation based on figures (as to prospective future earnings) which represented estimates testified to by decedent's employers. Where the evidence is complicated or extensive and involves numerous figures, the use of an expert economist's testimony is permissible in the trial judge's discretion, provided (as here) it is based upon proof before the jury. See Moffa v. Perkins Trucking Co., 200 F.Supp. 183, 190 (D.Conn.1961). Since the source of the figures used was clearly specified, there was no danger that the jury would misinterpret Dr. Martin's testimony as expressing his own personal opinion regarding the present value of decedent's probable future income as distinguished from a mathematical calculation based on evidence in the record. See Allendorf v. Elgin, Joliet & Eastern Railway Co., 8 Ill.2d 164, 133 N.E.2d 288, 292 (1956). Moreover the court clearly charged the jury that they were not bound by Dr. Martin's calculations and the jury in fact returned an award substantially lower than Dr. Martin's estimate.

■ We find no merit in any of the other contentions advanced by appellant. The size of the jury's verdict was fully supported by the evidence and we find no abuse of discretion in the trial court's refusal to set it aside as excessive. See Dagnello v. Long Island R.R. Co., 289 F.2d 797, 806 (2d Cir. 1961).

The judgment of the court below is affirmed.